A. B. WARE and WIFE v. A. R. NESBIT et als.

### *Evidence—Husband and Wife—Privy Examination—Judge's Charge.*

1. Formerly, the privy examination of a *feme covert* was held to give to the acknowledgment of her deed the sanctity of a judicial proceeding, but this has been changed by statute, and the acknowledgment and privy examination are now open to be attacked collaterally.

2. In an action to impeach the deed of a married woman for duress, declarations made to her in the absence of the defendants are competent, when they go to show essential facts laid before her, which induced her to execute the deed.

3. Where no exceptions were taken to the charge in the Court below, and it does not appear that the trial Judge has made an error in the law as laid down to the jury, exceptions to the charge made for the first time in this Court, will not be considered.

4. Where it is found by the jury, that a mortgage executed by husband and wife, of the wife's property, was obtained by duress practiced on the *feme*, it is error to cancel the instrument entirely, but it should still be left operative as to the husband's interest.

(*Jones* v. *Cohen*, 82 N. C., 75; *Frye* v. *Currie*, 91 N. C., 436, cited and approved).

CIVIL ACTION, tried before *McKoy, Judge,* and a jury, at Fall Term, 1884, of the Superior Court of RUTHERFORD county.

The plaintiffs, on the 16th day of August, 1877, executed their two joint notes under seal, in the aggregate sum of $335, to the partnership firm of A. R. Nesbit & Bro., which consisted of the defendants A. R. Nesbit, W. B. Nesbit, and W. J. Friday, in renewal of an indebtedness, before contracted by the plaintiff A. B. Ware. At the same time, the plaintiff made a deed to the defendant Reuben McBrayer, conveying an undivided one-

ninth interest, belonging to the *feme* plaintiff, in a tract of land descended from her mother, in trust to secure and provide for the payment of said notes, and with a power of sale, to be exercised when required by the creditor, in case of default, after November 1st, of that year. The notes not having been paid, the trustee sold the interest so conveyed, at public sale, in March, 1878, and it was purchased by the defendant A. R. Nesbit, and a deed therefor made to him by the trustee. On February 6th, 1882, under certain proceedings instituted by the tenants in common for partition, and pursuant to a decretal order in the cause, the entire tract was sold for $5,125.00 ; the corresponding fractional part whereof, represents the estate of the *feme* plaintiff in the land.

The plaintiffs, in their complaint, allege that the execution of the notes and of the deed in trust, appropriating the *feme* plaintiff's interest in the land, was procured by extortion and pressure brought to bear upon her, by the plaintiff's proceedings in an action against her husband, to force the result, and by which her own volition was paralyzed and overcome. These averments are denied in the answer ; and from this conflict of statement was elicited the issue submitted to the jury, and by them, under instructions of the Court, found in the affirmative, to-wit : "Were the notes and mortgage deeds set forth in the complaint, executed by Esther Ware and A. B. Ware to Reuben McBrayer, under duress ?"

It was in evidence on the trial, that the plaintiff A. B. Ware, in the Spring of 1877, formed a mercantile co-partnership with one Durham, and in April, purchased of the defendants Nesbit & Bro. five or six hundred dollars worth of goods, partly for cash, and partly on credit. In this way, his indebtedness originated, and to recover it, suit was brought, and the plaintiff A. B. Ware arrested and held to bail, upon affidavit of the defendant A. R. Nesbit, that the contract giving credit was superinduced by false and fraudulent representations of the purchasers, as to his resources and means of payment. These imputed fraudulent representations were denied by the plaintiff.

On examination of said A. B. Ware, testifying for the plaintiff, he was asked to state the circumstances under which he was arrested. The defendants interposed an objection to the evidence, which was overruled, and the witness stated that he was arrested by the Sheriff of Cleveland county, on July 31st, 1878, and on giving bond, with surety, was released.

Afterwards, the sureties told witness, that unless he compromised the debt, they would surrender him and send him back to jail. This evidence was also objected to, the defendants not being present, but admitted by the Conrt. His wife knew this fact. This was also received after objection overruled. Witness then testified that the *feme* plaintiff was present when the arrest was made, and knew that the sureties had threatened to deliver him up to the sheriff; that she was in delicate health, with a babe about one year old at her breast.

There was a judgment on the verdict, directing the bonds and mortgage to be cancelled, and the defendonts appealed.

*Messrs. Jones* and *Hardwick* filed a brief for the plaintiffs.
. *Mr. R. D. Johnston*, for the defendants.

SMITH, C. J. (after stating the facts). We reproduce so much of the testimony, as shows the pertinency and bearing of the evidence to which exception was taken. It is quite manifest that what transpired and was known to the *feme* plaintiff, was competent, in proof of the agencies which are alleged to have been instrumental in bringing about that state of mind, in which her volition and moral freedom were lost or impaired. The declarations offered, are not merely such in their narrative form, but essential facts before the *feme*, which led to acts, and which in elucidation of those acts, were entirely proper, as much so as her feeble condition and susceptibility to influence. The statement ·of the *feme* plaintiff herself, in regard to the circumstances under which she signed the notes and executed the deed, in which her own real estate was conveyed for their security and payment, are similar, but more in detail. It is thus set out in the case:

"The plaintiff Esther J. Ware, was then introdnced as a witness on her own behalf, and stated that she was in delicate health at the time she executed the deed in question; had a child about one year old at her breast; that the sheriff of Cleveland arrested her husband at his home in Shelby; that she was present when it was done, and was greatly excited; that after that he gave his bond and was released.   When it was started up again, my husband told me about it.   Objected to and admitted."   Exception by defendants.

"It was admitted by defendants, that the land was the land of Mrs. Ware; that she consented to sign the deed under the fear that her husband would be sent to the common jail, or she would not have signed it; that she owned the one-ninth interest in the lands in Rutherford county; inherited it from her mother."

Upon cross-examination, witness stated that she was examined by Mr. T. D. Lattimore, Clerk of the Superior Court of Cleveland county, and told him she signed the same freely and voluntarily, and without fear or compulsion on the part of her husband, or any one else, as stated on the certificate; that she was perfectly willing to convey her lands to keep her husband from going to jail; that she never saw the defendants, or any of them, and never had any conversation with them; that last summer or spring, her husband told her that a lawyer had said that she could get her land back, and they then instituted these proceedings, to get it back.

There was much conflicting testimony offerred for the defendants, and it was shown that that the clerk before whom the probate of the deed was taken, fully explained its provisions to the plaintiff Esther, and that, as is set out in the official certificate, it was acknowledged by her to have been voluntarily executed.

The Court charged the jury as follows:

"A married woman's land can only be conveyed by deed, executed by herself and her husband, and done freely and voluntarily, and without any force or fear of her husband or any other person whatsoevr, and this is perpetuated and completed

under our laws, by her privy examination, before the Clerk of Superior Court, as in this case.

"When a deed signed by both husband and wife is acknowledged before the Clerk, and he takes the privy examination, then this is a judicial determination, and can only be set aside for duress, force, fear, fraud, or false and fraudulent representations on the part of those for whose benefit the deed was made. That the deed was made to keep her husband from going to jail, is not that duress which would avoid a deed, if she preferred to execute this mortgage, rather than have her husband go to jail. It can only be avoided from force, or fear, or wrong done to bring about the arrest or unlawful act, which was calculated to delude or deceive or mislead her about the truth of the transaction.

"If the defendant Nesbet & Bro. had a *bona fide* claim against A. B. Ware, and upon that, sued out an arrest and bail, and took A. B. Ware into custody, and he gave bail for his appearance at Mecklenburg Court, and A. B. Ware interceded with his wife, by fair and honest representations, and without force or putting her in fear, she made and executed with her husband, a mortgage on her own land to secure the debt, with a full knowledge of the facts, and to procure the release of her husband, then there would be no duress. Duress is some act that takes away the free will of the wife, or deception by false and fraudulent representations, used to attain the execution of the mortgage. If the Nesbets resorted to the arrest and bail, when not entitled to that remedy, and either by false statements or fraudulent acts, procured the arrest of the husband, or if the arrest was made with the unlawful purpose to procure the mortgage, and by that instrumentality operated upon the mind of the wife, so as to wrongfully put her in the position of choosing between the imprisonment of her husband, or executing a mortgage on her land to secure the debt, then the false statements and wrongful arrest of the husband, and thereby obtaining the mortgage in order to secure the debt, would be duress."

Certain written instructions were asked by the appellants when the testimony was concluded, but were withdrawn after the delivery of the general charge, and are not in the record.

The directions to the jury as to the law, are quite as favorable to the defendants as they can ask, and the *feme* plaintiff is held to a rigid accountability, scarcely less than if she were a *feme* sole, for her acts, and the disability of her condition, affords her as little protection from their consequences in the execution of her deed.

Formerly, the acknowledgement of execution of a deed by a married woman, with her privy examination, was held to give to it the sanctity and conclusiveness of a judicial proceeding, but it is otherwise now, and her deed, like that of her husband, is now exposed to impeachment, on the same grounds as his *Jones* v. *Cohen*, 82 N. C., 75. The present is an impeaching action, having for its object, the annulling of what was done by the plaintiff, and her restoration to her former rights.

There was no instruction asked that there was no evidence of the duress alleged, and this point is not before us. Nor can we notice the defects imputed to the instructions given, for no correction was suggested—none pointed out,—and the appellants seem to have been content with the entire charge. There is no false proposition of law, in itself considered, which will warrant an exception first taken in this Court, as said in *Fry* v. *Currie*, 91 N. C., 436, and other subsequent cases.

There is no error in the record, and the judgment must be affirmed, except in so far as it directs the cancelling of the notes and deeds, which remain effective, so far as the said A. B. Ware is individually concerned, and are inoperative only as to the *feme* plaintiff.

Modified and affirmed.