L. J. EDWARDS et al. v. R. E. BOWDEN et al.

*Duress—Mortgage—Foreclosure—Feme Covert—Voluntary Execution—Threats—Fraud—Extortion—Evidence.*

1. In an action to foreclose a mortgage executed by a husband and wife, they set up the defence of *duress* exercised upon the *feme* defendant, in that while she was in her sick-bed her husband threatened if she did not sign the deed he would abandon her and her two children, dependent upon him for support, which threat she believed; that one of the plaintiffs also threatened to sell the chattels of her husband, upon which they held a mortgage, and to put him in jail for failing to convey certain real estate he had agreed in writing to convey, and that she was induced by such threats to execute the deed of mortgage: *Held,* that these facts, taken together, amounted to duress.

2. Neither the threat to imprison, nor to foreclose, nor the threat of abandonment, taken singly would, ordinarily, be sufficient ground for relief. There must be something more than a mere threat.

3. All the combined circumstances of a case, though they do not in themselves amount to technical duress, are still admissible in evidence to make out a case of fraud and extortion in obtaining the instrument.

This was a CIVIL ACTION, brought for the foreclosure of a mortgage deed executed by the defendant to the plaintiff on the *feme* defendant's land, heard before *Boykin, J.*, at Spring Term, 1890, of the Superior Court of GREENE County.

The *feme* defendant, in her answer, alleged that she is a *feme covert,* and that she is the wife of the other defendant, R. E. Bowden; that her signature to said mortgage was obtained by fraud and collusion of the plaintiffs, and the threats and compulsion of her said husband; that her said husband, R. E. Bowden, told her that if she did not sign said mortgage deed to plaintiffs, that he would leave and abandon her; that at the time she executed said mortgage deed to plaintiffs she was sick and confined to her bed; that

the said Bettie J. did not sign said mortgage deed willingly and voluntarily, but was constrained to execute the same by reason of the threats and compulsion of her said husband, R. E. Bowden, and the fraudulent misrepresentation of the plaintiff Q. J. Edwards.

The defendant Bettie J. Bowden testified, that at the time she executed the mortgage deed sued on, and at the time when her private examination was taken, she was sick in bed; that her husband had threatened her that if she did not sign it that he would leave her; that she had two children, and was dependent upon her husband for her and their support, and that she believed that her husband would execute his threat; that one of the plaintiffs told her that if she did not execute such deed that he would sell all her husband's chattels, upon which they had a mortgage, and would prosecute and put him in jail for failing to convey to them certain real estate which he had agreed in writing to convey to them in order to get advances.

The plaintiffs' counsel contended that there was not sufficient evidence of duress to avoid the deed as to the *feme* defendant.

The Court charged the jury, that "if they believed that at the time the *feme* defendant executed the mortgage deed sued on, she was sick in bed, and that the defendant R. E. Bowden, her husband, had threatened her that if she did not execute the deed that he would leave her; that she had two children, and was dependent upon her husband for her and their support, and that she believed that her husband would execute his threat, and that one of the plaintiffs told her that if she did not execute said deed that he would sell the chattels of her husband, upon which they had a mortgage, and prosecute and put him in jail for failing to convey to them certain real estate, which he had agreed in writing to convey to them, in order to get advances, and that said *feme* defendant, being induced by said threats of her hus-

band and the said plaintiffs, and on account of her sickness, executed said deed, that this would be duress, and that they should find that she did not execute said deed willingly, and would find for the defendants."

To which part of the charge the plaintiffs excepted. Verdict for the defendants.

Motion for new trial by the plaintiffs on account of misdirection of the jury. Motion denied. Judgment. From which judgment the plaintiffs appealed to the Supreme Court.

Chapter 389, Acts 1889, was passed after these facts occurred.

*Mr. W. C Munroe,* for plaintiffs.
*Messrs. G. M. Lindsey* and *F. A. Woodard,* for defendants.

SHEPHERD, J.: "By *duress,* in its more extended sense, is meant that degree of severity, either threatened and impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness." 2 Greenleaf Ev., § 301.

Bacon, in his Abridgment, vol. 2, p. 156, referring to Lord Coke, says "that for menaces, in four instances, a man may avoid his own act. 1. For fear of loss of life. 2. Of loss of member. 3. Of mayhem. 4. Of imprisonment." The threat of imprisonment "may be to the person of the party or of the party's husband, wife, parent or child, through constraint of which he—in form—consents to what he otherwise would not." Bishop Cont., § 715. Though several modern authorities have been very liberal in the application of this doctrine, we think that a wise public policy requires that contracts solemnly entered into by deed, should not be avoided, except upon the most imperative demands of necessity and justice, and we cannot, therefore, sanction the principle of some of the decisions, that a mere threat of unlawful impris-

onment, standing alone, will be sufficient to avoid a deed. There should be some process issued or some steps taken towards the execution of the threat, or, at least, some circumstances attending it which would produce a reasonable apprehension of imminent arrest or imprisonment.   In the case of *Ware* v. *Nesbit*, 94 N. C., 664, the husband had been actually arrested and bailed, and the wife was present and "greatly excited."   Afterwards, the sureties of the husband threatened to surrender him and "send him back to jail" unless the debt was compromised.   The wife knew of this, and under the influence of this threat executed the deed.

No instructions were asked, says the Court, to the effect that the evidence was insufficient to sustain the alleged *duress*, and the ruling was based only upon the exceptions to the instructions given to the jury.   The decision leaves us in some doubt whether the Court would have held that the evidence was sufficient had the point been properly presented.   Assuming, however, that the testimony was sufficient, the case is distinguishable from the present, in that the husband had actually been arrested, and was, it seems, in imminent danger of a new imprisonment by reason of his being surrendered by his bail.   Thus much we have been careful to say, in order to exclude the idea that we think that the simple threat of the plaintiff in this case, was, in itself, sufficient to constitute technical duress.   Neither would the threat to foreclose the mortgage upon the husband's chattel property have that effect; nor do we think that the threat of abandonment made by a husband would, under ordinary circumstances, amount to such duress.

We are of the opinion, however, that while neither of these grounds would, in itself, be sufficient to warrant a finding of technical duress, yet when they are taken together, and in connection with the important facts that the wife was prostrated by sickness, and that her privy examination was taken at once and while she was in that

condition, there was sufficient testimony to be submitted to the jury in support of the allegation of fraud and compulsion which is set up in the answer. Especially is this so, when the Court made the establishment of all of these circumstances necessary to an affirmative finding, by charging the jury that "if she (the defendant) was induced (to execute the deed) by the said threats of her husband and the said plaintiff, *and on account of her sickness,*" they should find in her favor.

The argument here proceeded almost entirely upon the ground of legal duress, but we think that, taking all of the alleged facts to be true, a case would be made out which would call for the equitable intervention of the Court. "In equity there is no rule defining inflexibly what kind or amount of compulsion shall be sufficient ground for avoiding a transaction. * * * The question to be decided in each case, is whether the party was a free and voluntary agent. Any influence brought to bear upon a person entering into an agreement, or consenting to a disposal of property, which, having regard to the age, capacity of the party, the nature of the transaction, and all the circumstances of the case, appears to have been such as to preclude the exercise of free and deliberate judgment, is considered by courts of equity to be undue influence, and is a ground for setting aside the act procured by its employment." Pollock Cont., 524. "Where there is no coercion amounting to duress, but a transaction is the result of a *moral, social or domestic* force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances, undue influence naturally has a field to work upon in the conditions or circumstances of the person influenced, which renders him peculiarly susceptible and yielding: his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weak-

ness, his pecuniary necessities, his ignorance, lack of advice, and the like." Pom. Eq. Jur., 951.

It is true that where duress alone is relied upon, equity follows the law (2 Pom. Eq., 950), but there is something more in this case. We have a woman on a bed of sickness; we have the confidential relation of husband and wife, and the presumed influence of the husband over her. Pom. Eq. Jur., § 963; Bispham's Eq., § 237. We have also (*Huguen* v. *Basely*, 2, White & Tudor's L. C. 1156 notes) the husband threatening to abandon her and their two children, who were dependent upon him for support, and this in connection with the threats of unlawful prosecution and imprisonment of the husband. These combined circumstances bring the case within the principle stated by Pollock and Pomeroy, *supra*, and also by 2 Greenleaf on Ev., § 301, *supra*, who says that facts which in themselves do not amount to technical duress are " admissible in evidence to make out a defence of fraud and extortion in obtaining the instrument." It is upon this ground that we rest our decision.

Affirmed.