IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-655

Filed 19 March 2024

McDowell County, Nos. 20JT35 20JT36 20JT37 20JT38

IN RE: X.M. M.M. M.M. P.C.

Appeal by respondent from order entered 19 January 2023 by Judge Corey J. MacKinnon in McDowell County District Court. Heard in the Court of Appeals 6 March 2024.

> *Vitrano Law Offices, PLLC, by Sean P. Vitrano, for the respondent-appellant-mother.*

> *McDowell County DSS, by Aaron G. Walker, for the petitioner-appellee.*

> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for the guardian ad litem.*

TYSON, Judge.

Respondent-Mother ("Mother") appeals from an order entered on 19 January 2023, which terminated her parental rights to her four minor children. We affirm.

## I. Background

Mother and Father are the biological parents of their four minor children, Alexander, Maria, Matthew, and Patricia. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Father did not appeal the trial court's 19 January 2023 order terminating his parental rights.

Father had primary custody of all four children since May 2014. The Yancy

County district court found Mother had failed to provide proper care and supervision to her children or to follow a safety plan. The court also found she had kept the children in a home where domestic violence had occurred, and she had abused controlled substances. The order adjudicated the four children as neglected pursuant to N.C. Gen. Stat. § 7B-101(15) (2023) and granted Father primary custody.

The McDowell County Department of Social Services ("DSS") began investigating Father in October 2019. A report to DSS alleged Father had left the four children under the care of a 21-year-old cousin, while Father lived and traveled out of state doing carnival work. Father discussed the matter with DSS and agreed to only leave the children with the young cousin for short periods of time.

McDowell County DSS received another report on 24 February 2020. This report alleged Father had left the four children with a cousin for six months and asserted the cousin was unable to properly address the minor children's behaviors or to provide proper care and support. An exhibit attached to the subsequent Juvenile Petition summarized the report as follows:

> The allegations were that the minor children were fighting and physically assaulting one another. The minor children disclosed to [the] social worker that a male teen in the home encouraged [Alexander] to physically assault the other three children. [Alexander] has been diagnosed with PTSD, ODD, ADHD, [and] Autism Spectrum Disorder. [Alexander] was taunted by the adults in the home and his behavior escalated into a physical altercation between [Alexander] and the other minor children. [Alexander] is eligible to be placed in a Level II Therapeutic Foster Care based on his mental health issues, however, the parents

> have not made themselves available to sign the necessary
> forms to facilitate that move.

Later reports also identified Maria and Patricia as possible victims of sexual assault by a non-relative.

DSS investigated and assessed whether the cousin was an acceptable placement for the children and whether any other relatives were available for placement. The cousin caring for the children admitted to the social worker that she suffered from multiple sclerosis, anxiety, and depression, and could not work or adequately care for the children. McDowell County DSS attempted to reach Mother, who was living in Summerton, South Carolina, at the time. Mother failed to respond. Social workers also reached out to Father to identify another potential guardian for the children. Father explained he "had no one" else and stated: "I guess do what you need to do."

The court adjudicated the four children as neglected and dependent and placed them into DSS custody on 24 March 2020. An Adjudication Order was entered on 11 June 2020, and it required Mother and Father to "aggressively comply" with the following case plan requirements: (1) complete a Comprehensive Clinical Assessment, follow all service recommendations, and demonstrate benefit from the service recommendations; (2) submit to random drug screenings as requested by DSS and produce negative results; (3) maintain appropriate housing, employment or income, and transportation; and, (4) consistently visit with the children.

Several permanency planning review hearings were held between March 2020 and August 2022, including hearings on 27 August 2020, 22 October 2020, and 27 May 2021. Permanency planning review hearings were scheduled for 14 October 2021 and 18 November 2021, but those hearings were rescheduled because the evaluation of Father's new residence in California had not been completed. Another permanency planning hearing scheduled for 9 December 2021 was rescheduled because the social worker was sick. A permanency planning hearing was held on 20 January 2022, which changed the primary permanent plan for each of the minor children to adoption with a secondary plan of reunification.

Mother and Father put minimal efforts into completing their case plans, did not cooperate with DSS, and did not regularly visit with their children between the time the children were taken into DSS custody in March 2020 and the hearing to terminate Mother's and Father's parental rights in August 2022. Father tested positive for several drugs, including cocaine, methamphetamine, amphetamines, and THC. Mother tested positive for amphetamines, methamphetamine, cocaine, cannabinoids, benzoylecgonine, and norcocaine, and she also admitted to using heroin.

Father avoided contact with DSS, and at one point hung up the phone on a social worker. Mother would reply to text messages, but she refused to reveal her whereabouts, where she was living, and evaded being served with motions. Lastly, both Mother and Father rarely and sporadically visited with their children

throughout the more than two-year period while in DSS' custody.

A motion to terminate parental rights was filed on 11 August 2022, and an amended motion was later filed on 11 October 2022. DSS sought to terminate Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(6) (2023) and to terminate Father's parental rights pursuant to N.C. Gen. Stat § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(7). The court terminated Mother's and Father's parental rights pursuant to each of the respective grounds as alleged in DSS' petitions on 19 January 2023. Father did not appeal.

Mother filed notice of appeal on 22 February 2023.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 7B-1001(a)(7) (2023).

## III.    Issues

Mother argues the trial court erred by concluding grounds existed to terminate her parental rights according to N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(6). She also argues the available transcript, which was inaudible for certain portions due to technological errors, is inadequate to provide meaningful appellate review.

## IV.    Termination of Parental Rights

"[A]n adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. . . . [I]f this Court

upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citations omitted).

## A. Standard of Review

"We review a trial court's adjudication [to terminate parental rights] under N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (citation and internal quotation marks omitted). "The trial court's supported findings are deemed conclusive even if the record contains evidence that would support a contrary finding." *In re L.D.*, 380 N.C. 766, 770, 869 S.E.2d 667, 671 (2022) (citation and internal quotation marks omitted).

Unchallenged findings of fact are presumed to be supported by sufficient evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citations omitted)).

In a termination of parental rights hearing, "[t]he burden in such proceedings shall be upon the petitioner or movant and all findings of fact shall be based on clear, cogent, and convincing evidence." N.C. Gen. Stat. § 7B-1109(f) (2023). When a challenged finding of fact is not necessary to support a trial court's conclusions, those

findings "need not be reviewed on appeal." *See In re C.J.*, 373 N.C. 260, 262, 837 S.E.2d 859, 860 (2020) (citation omitted).

## B. Analysis

Courts may terminate a parent's rights to the care, custody, and control of their child when certain limited, statutorily-defined grounds exist. A court may terminate parental rights if the evidence and findings clearly and convincingly demonstrate:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2).

Our Supreme Court has outlined the analysis trial courts must perform before terminating a parent's parental rights pursuant to this ground:

> Termination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, *and* (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020) (emphasis supplied) (citation omitted).

"[A] respondent's prolonged inability to improve her situation, despite some

efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress . . . sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.W.*, 173 N.C. App. 450, 465-66, 619 S.E.2d 534, 545 (2005) (citation and internal quotation marks omitted). "Leaving a child in foster care or placement outside the home is willful when a parent has the ability to show reasonable progress, but is unwilling to make the effort." *In re A.J.P.*, 375 N.C. 516, 525, 849 S.E.2d 839, 848 (2020) (citation, internal quotation marks, and alterations omitted).

Our Supreme Court stated:

> Parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2). However, in order for a respondent's noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal from the parental home.

*In re J.S.*, 374 N.C. at 815-16, 845 S.E.2d at 71 (citation, internal quotation marks, and alterations omitted).

The Supreme Court further explained a parent's non-compliance with case plan conditions are relevant, "provided that the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home." *In re T.M.L.*, 377 N.C. 369, 379, 856 S.E.2d 785, 793 (2021) (citation and quotation

marks omitted).

Here, the children were removed from Mother's and Father's care for their failure to: create a safe living environment for their children; to refrain from illegally using controlled substances; and, to find a suitable guardian while they traveled to carnivals in various states. Mother failed to address and remedy each of these concerns.

Mother has consistently struggled to adequately address her substance abuse issues. While Mother attended a detoxification program for one week in August 2020, she continued to test positive for the presence of controlled substances afterwards. In December 2020, Mother tested positive for the presence in her body of amphetamines, methamphetamines, cocaine, cannabinoids, benzoylecgonine, and norcocaine. Mother later attended some group substance abuse sessions in March of 2021. Despite those group sessions, Mother continued to refuse drug tests and screens throughout the life of this case; and on the occasions when she did comply with the random drug screens, she always tested positive.

Mother also failed to comply with the portions of her case plan requiring her to create a safe living environment for her children. As of the date of the termination of parental rights hearing, Mother was homeless and had been so for several months. When social workers attempted to serve Mother with motions to terminate her parental rights, she revealed she was temporarily working in Coney Island, but refused to reveal her exact whereabouts. If her children were not in her care while

traveling for work, Mother failed to provide DSS with any information about the identity of where they would reside or who the children would stay with.

The trial court also explained Mother's incapability to parent was willful and would likely continue into the future, given her "failure to refrain from substance abuse", and given she "has not engaged in any meaningful treatment." In other words, "the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile[s'] removal from the parental home." *Id.* The trial court did not err by terminating Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).

## V. Transcript

Mother cites the section of the Juvenile Code regarding the recordation of juvenile proceedings, which provides: "All adjudicatory and dispositional hearings shall be recorded by stenographic notes or by electronic or mechanical means. Records shall be reduced to a written transcript only when timely notice of appeal has been given." N.C. Gen. Stat. § 7B-806 (2023).

An appellant bears the burden to "commence settlement of the record on appeal, including providing a verbatim transcript if available." *Sen Li v. Zhou*, 252 N.C. App. 22, 27, 797 S.E.2d 520, 524 (2017). "Where the appellant has done all that she can to do so, but those efforts fail because of some error on the part of our trial courts, it would be inequitable to simply conclude that the mere absence of the recordings indicates the failure of appellant to fulfill that responsibility." *Coppley v.*

*Coppley*, 128 N.C. App. 658, 663, 496 S.E.2d 611, 616 (1998).

This Court has previously explained: the "unavailability of a verbatim transcript does not automatically constitute error. To prevail on such grounds, a party must demonstrate that the missing recorded evidence resulted in prejudice. General allegations of prejudice are insufficient to show reversible error." *State v. Quick*, 179 N.C. App. 647, 651, 634 S.E.2d 915, 918 (2006). In addition, "violation of the statute [requiring recording] does not relieve defendant of her burden of complying with App. R. 9(a)(1)(v) and showing prejudicial error." *Miller v. Miller*, 92 N.C. App. 351, 354, 374 S.E.2d 467, 469 (1988) (first citing an earlier version of N.C. R. App. P. 9(a)(1)(e); and then citing *In re Peirce*, 53 N.C. App. 373, 281 S.E.2d 198 (1981)).

In child custody cases, this Court has explained:

> [O]nly where a trial transcript is entirely inaccurate and inadequate, precluding formulation of an adequate record and thus preventing appropriate appellate review[,] would a new trial be required. Where the transcript, despite its imperfections, is not so inaccurate as to prevent meaningful review by this Court, the assertion that the recordation of juvenile court proceedings are inadequate to protect juvenile's rights is properly overruled.

*In re Hartsock*, 158 N.C. App. 287, 293, 580 S.E.2d 395, 399 (2003) (citations, internal quotation marks, and alterations omitted).

Respondent, working together with DSS' counsel and the Guardian Ad Litem's counsel, developed a purported narrative of proceedings. The introduction to the

narrative explained the portions of the hearing the transcriptionist was able to decipher from the recordings were "inadequate for the parties to designate that the transcript would be used to present testimonial evidence and statements occurring at the hearing." Further, the narrative introduction explained the history of how both parties addressed the missing segments and settled upon the narration provided on appeal:

> On 8 June 2023, respondent's counsel served petitioner's counsel and GAL counsel with a redlined version of the transcript, reflecting what respondent's counsel could hear when listening to the audio file. On 23 June 2023, GAL counsel suggested changes to the annotations. Respondent's counsel accepted those changes on 7 July 2023. On that same date and 13 July 2023, Respondent's counsel circulated a proposed narrative of proceedings. The parties agree that the following shall serve as a narrative of the proceedings that occurred on 19 January 2023 pursuant to N.C. R. App. P. 9(c)(1). It is not a verbatim or complete transcript. The parties further agree that the narrative best presents the true sense of the testimonial evidence, statements made, and events occurring at the TPR hearing concisely and at a minimum of expense to the litigants.

Mother argues the available narrative of proceedings is inadequate to resolve whether sufficient findings support the likelihood of adoption of Maria, Matthew, and Patricia, which is a required factor in the best interest determination. However, the trial court also took judicial notice of all prior orders and reports from the underlying juvenile orders.

Mother has failed to demonstrate the narrative prepared for appeal, coupled

with the prior orders and reports from previous permanency planning hearings, were "entirely inaccurate and inadequate" or otherwise "preclud[ed] formulation of an adequate record and thus prevent[ed] appropriate appellate review." *In re Hartsock*, 158 N.C. App. at 293, 580 S.E.2d at 399 (citation and internal quotation marks omitted). Mother's argument is without merit and overruled.

## VI. Conclusion

Respondent's parental rights were properly terminated under N.C. Gen. Stat. § 7B-1111(a)(2). *See In re T.M.L.*, 377 N.C. at 379, 856 S.E.2d at 793. We need not address Respondent's remaining arguments on appeal regarding grounds for termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (6). *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71.

Mother has failed to demonstrate prejudice stemming from the inadequacy or the unavailability of portions of the trial court transcript. Mother has not demonstrated any inaccuracies in the provided and agreed-upon narration or explained how the provided information precluded appellate review. *See In re Hartsock*, 158 N.C. App. at 293, 580 S.E.2d at 399. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges ARROWOOD and COLLINS concur.