WIMPHREY W. JENKINS, PEGGY JOHNSON, RUBY J. BASKERVILLE, AND EMMA CLEMONS v. RICHMOND COUNTY, NORTH CAROLINA; LAT PURSER AND ASSOCIATES, INC.; CORNERSTONE DEVELOPMENT COMPANY; FOOD LION, INC.; AND JOHN ALDEN LIFE INSURANCE COMPANY; AND CHARLES L. FULTON, TRUSTEE

No. 8920SC1220

(Filed 7 August 1990)

**1. Taxation § 39.2 (NCI3d) — tax foreclosure sale — insufficient notice**

The trial court properly refused to grant defendants' motion for a directed verdict at the conclusion of plaintiffs' evidence in an action to remove a cloud upon title arising from a tax foreclosure sale where the deed through which plaintiffs were conveyed the disputed lot lists the names of Peggy Johnson, Ruby Baskerville, and Emma Clemons along with Wimphrey Jenkins; the only tax notice sent by Richmond County concerning the property in question was sent to "Wimphrey Jenkins, et al, Charlotte Street, Hamlet"; the county made no effort to determine the location of or to send a tax notice to the other three plaintiffs, all current owners listed on the deed; the failure of the county to attempt to send mailed notices to each individual taxpayer rendered the subsequent execution sale invalid; and the record also contains competent evidence that the county did not exercise due diligence in attempting to locate the current mailing address of any of the owners.

**Am Jur 2d, State and Local Taxation §§ 921-923, 927, 932.**

**2. Equity § 2.2 (NCI3d) — tax foreclosure — insufficient notice — laches not applicable**

An action to remove a cloud on title arising from a tax foreclosure sale was not appropriate for the application of the laches doctrine where the county's failure to properly notify plaintiffs rendered the judgment void but a full examination of equities in this case reveals that all the parties here must share in the blame for this predicament. Moreover, the better view is not to apply the doctrine to a void tax foreclosure judgment.

**Am Jur 2d, State and Local Taxation §§ 1050, 1056.**

**3. Betterments or Improvements to Real Property § 20 (NCI4th) — tax foreclosure — sale to third party — shopping center — remand for application of betterments statutes**

> An action to remove a cloud on title arising from a tax foreclosure was remanded for application of North Carolina's betterments statute where the lot was subsequently sold and became part of a shopping center. While plaintiffs are the rightful owners of the lot, they must compensate defendants for the improvements; plaintiffs may opt to relinquish their estate to defendants, who must pay plaintiffs the value of the property in its unimproved condition. Plaintiffs are also entitled to the rents and profits from the property in its unimproved condition for the period of defendants' possession. If plaintiffs fail to exercise one of these options, the value of the improvements becomes a lien and, if not paid, a sale of the premises will be ordered. N.C.G.S. § 1-347.

**Am Jur 2d, State and Local Taxation §§ 1042, 1043, 1045, 1048, 1049.**

APPEAL by plaintiffs from judgment entered 21 June 1989 by *Judge W. Freeman* in RICHMOND County Superior Court. Heard in the Court of Appeals 10 May 1990.

Plaintiffs filed their initial pleading in this matter on 4 December 1987 seeking to remove a cloud on their title to a tract of property located in Hamlet, North Carolina. Subsequently, plaintiffs twice amended their complaint to add additional defendants. Defendants filed answers to each complaint denying plaintiffs' allegations and seeking dismissal of the action. Plaintiffs twice filed a motion for summary judgment. Both motions were denied prior to trial.

The trial of this action commenced on 12 June 1989 and the issues of whether the County complied with the notice requirements of N.C. Gen. Stat. § 105-375 (1989), whether plaintiffs were barred by laches and whether defendants were entitled to betterments were submitted to the jury. The jury found that defendant County did not exercise reasonable diligence in notifying plaintiffs of the impending tax foreclosure action, but that plaintiffs were barred by laches from claiming ownership to the property in question. The jury did not reach the issue of betterments. From this judgment, plaintiffs appealed.

The facts from the record and briefs indicate that this dispute is over the ownership of a small tract described as "Lot #50 on Charlotte Street in Block C of Circlewood Subdivision," located within the city limits of Hamlet in the county of Richmond. In late 1987, defendant Cornerstone Development Company ("Cornerstone") constructed a building that forms part of a shopping center on this lot and adjacent lands. The building is currently leased to defendant Food Lion, Inc. The disputed land and the remainder of the shopping center real estate are subject to the lien of a deed of trust to defendant Charles L. Fulton, trustee for John Alden Life Insurance Company. Cornerstone acquired title to the property by warranty deed from defendant Lat Purser & Associates, Inc. ("Lat Purser"), which in turn acquired title by quitclaim deed from Richmond County.

Plaintiffs acquired their interest in Lot #50 through a deed recorded 3 April 1978, which was conveyed from their aunt. The deed listed plaintiffs' addresses only as the "State of New Jersey." No further information concerning the location of plaintiffs appears on the recorded deed. In 1978, plaintiffs entered into a written agreement in which they agreed that plaintiff Wimphrey Jenkins would be in charge of the property.

Subsequent to their purchase of the lot, plaintiffs listed the property with the Hamlet City Tax Department, providing the department with a current mailing address of Wimphrey Jenkins, and thereafter paid their city property taxes. Plaintiffs, however, were unaware of their dual listing obligation and so failed to list their property with the Richmond County Tax Office. Upon plaintiffs' failure to list the property in 1979, Richmond County tax officials, by checking the Register of Deeds, listed the property in the name of Wimphrey Jenkins and used the physical location of the lot as the owner's address. The County then sent a tax bill to that address. Plaintiffs never maintained a residence in Hamlet. The mailed tax bill was returned undelivered, marked "Addressee Unknown." Plaintiffs, accordingly, never paid their *ad valorem* county taxes due on the property. A lien attached and Richmond County proceeded in the *in rem* method of foreclosure. See G.S. § 105-375. The lien was sold to Richmond County for $90.22, the amount of the 1979 taxes plus penalties, interest and costs. The property was subsequently conveyed to Richmond County by deed dated 12 May 1982. On 2 December 1986, Richmond County sold the lot in question at public auction to Lat Purser for $402.50.

Plaintiffs first learned their property had been sold when a relative telephoned them on 30 October 1987 after construction on the property had begun.

*Clayton and Clayton, by Theaoseus T. Clayton, Jr., for plaintiff appellants.*

*Leath, Bynum, Kitchin & Neal, by Stephan R. Futrell and Fred W. Bynum, Jr., for all defendant appellees except Richmond County; and Page, Page & Webb, by John T. Page, Jr., for defendant appellee Richmond County.*

ARNOLD, Judge.

[1] First we review defendants' cross-assignment of error that the trial judge erroneously failed to grant their motion for directed verdict made at the conclusion of plaintiffs' evidence. Defendants argue that the evidence establishes Richmond County complied with the *in rem* foreclosure statute and that this issue was improperly submitted to the jury.

The deed through which plaintiffs were conveyed the disputed lot lists the names of Peggy Johnson, Ruby Baskerville, Emma Clemons along with Wimphrey Jenkins. G.S. § 105-375(c) provides in part:

> A notice stating that the judgment will be docketed and that execution will be issued thereon shall also be mailed by certified or registered mail, return receipt requested, to the current owner of the property (if different from the listing owner) if: (i) a deed or other instrument transferring title to and containing the name of the current owner was recorded in the office of the register deeds . . . and, (ii) the tax collector can obtain the current owner's mailing address through the exercise of due diligence.

The only tax notice sent by Richmond County concerning the property in question was sent to "Wimphrey Jenkins, et al, Charlotte Street, Hamlet." The County made no effort to determine the location of or to send a tax notice to the other three plaintiffs, all current owners, who were listed on the deed. This failure of the County to attempt to send mailed notices to each individual taxpayer rendered the subsequent execution sale invalid. *See Henderson County v. Osteen,* 292 N.C. 692, 235 S.E.2d 166 (1977).

The record also contains competent evidence that the County did not exercise due diligence in attempting to locate the current mailing address of any of the owners. Lot #50 is located within the city limits of Hamlet, and as of 25 January 1980, the Hamlet City Tax Office had a record of Wimphrey Jenkins' current address in Vauxhall, New Jersey. It is axiomatic that prior to an action affecting property, the State must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L.Ed. 865, 873 (1950). A telephone call by Richmond County tax officials to their counterparts in the Hamlet City Tax Department to determine if anyone was paying the city taxes on Lot #50 would have revealed the current address of Wimphrey Jenkins. In light of these facts, we cannot say Richmond County exercised due diligence in locating the owners.

[2] Next we examine plaintiffs' contention that the trial court erred in submitting the issue of laches to the jury. First, we point out that Richmond County's failure to properly notify plaintiffs rendered the judgment entered for the tax foreclosure sale void. "Notice and an opportunity to be heard are prerequisites of jurisdiction . . . and jurisdiction is a prerequisite of a valid judgment." *Commissioners of Roxboro v. Bumpass*, 233 N.C. 190, 195, 63 S.E.2d 144, 147 (1951). Thus, the question at this juncture is whether the doctrine of laches can be used to estop plaintiffs from attacking the void judgment.

Laches is an equitable doctrine and ordinarily should not be a defense to a motion to open a judgment that is void. 46 Am. Jur. 2d *Judgments* § 752 (1969). In *Powell v. Turpin*, 224 N.C. 67, 29 S.E.2d 26 (1944), plaintiff sought to have a tax foreclosure sale declared invalid for want of proper service of process. In deciding for the plaintiff, the court stated, "It is likewise elementary that unless one named as a defendant has been brought into court in some way sanctioned by law . . . , the court has no jurisdiction of the person and judgment rendered against him is void." *Id.* at 70, 71, 29 S.E.2d at 28. The court in *Powell* also examined whether such a judgment was subject to a collateral attack. "No statute of limitations runs against the plaintiffs' action by reason of the judgment of foreclosure, and laches, if any appeared, is no defense." *Id.* at 71, 29 S.E.2d at 29; *see Page v. Miller and Page v. Hynds*, 252 N.C. 23, 113 S.E.2d 52 (1960). "The passage

of time, however great, does not affect the validity of a judgment; it cannot render a void judgment valid." *Monroe v. Niven*, 221 N.C. 362, 365, 20 S.E.2d 311, 313 (1942). "A nullity is a nullity, and out of nothing nothing comes. *Ex nihilo nihil fit* is one maxim that admits of no exception." *Id.* (citations omitted).

Defendants, however, argue that these cases are inapplicable because they were not decided under G.S. § 105-375. This statute was enacted as an alternative to N.C. Gen. Stat. § 105-374 (1989), which authorizes tax foreclosures by actions in the nature of an action to foreclose a mortgage. G.S. § 105-375 is intended to be "a simple and inexpensive method of enforcing payment of taxes . . . ." G.S. § 105-375(a). Furthermore, we recognize that the rule that laches cannot be applied to a motion to vacate a void judgment is not absolute. Laches may attach where during an unnecessary delay, the interests of a third person who innocently relied on the judgment changed his position and suffered some injury. 27 Am. Jur. 2d *Equity* § 169 (1966). An injury may be shown where, as here, defendants expended money or improved property. *Id.* at § 171; *Ford v. Willits*, 237 Kan. 13, 697 P. 2d 834 (1985).

Defendants claim plaintiffs' failure to properly list Lot #50 for taxes led them to believe they held legal title to the property. Plaintiffs served their papers on defendant Cornerstone, the project contractor, on 29 December 1987. The Food Lion building was about seventy-five percent complete at that point. The estimated value of the improvements situated on Lot #50 at that time was $225,000. Defendants chose to finish the shopping center even after receiving the papers, pushing the value of the improvements even higher.

Despite this expenditure, we are not persuaded that this situation is appropriate for the application of the laches doctrine. We take this position for several reasons. While some jurisdictions have allowed laches to breathe life into a void judgment, we believe the better view is not to apply the doctrine to a void tax foreclosure judgment. 7 J. Moore, *Moore's Federal Practice* § 60.25[4] at 240-41 (2d ed. 1990). We are wary of any result that allows for the enforcement of a void judgment.

Second, a full examination of the equities in this case reveals that all the parties here must share in the blame for this predicament. While defendants clearly hold a colorable title to Lot #50, we cannot view these defendants as innocent third parties. Lat Purser bought Lot #50 for $402.50 from Richmond County at a

tax foreclosure sale by quitclaim deed. Purser and the other parties, therefore, were on notice that the title to the lot was suspect at best. We would think it incumbent of anyone planning to erect $225,000 worth of improvements on a lot to include in their title search a check of *all* pertinent records, including those in the Hamlet City Tax Department which revealed at the time that Wimphrey Jenkins was paying the property taxes on Lot #50.

[3] Finally, the most equitable resolution to this problem is to apply our State's betterment statutes. In their Answer, defendants other than Richmond County requested compensation for their improvements to the property in the event plaintiffs were determined to be the true owners of the property. This issue was submitted to the jury, but not reached. Furthermore, on appeal defendants requested that we remand on the issue of betterments if we found plaintiffs were owners of Lot #50.

Our betterment statutes allow defendants who in good faith and under colorable title enter into possession of land under a mistaken belief that their title is good and who are subsequently ejected by the true owners to petition the court for compensation for the improvements they placed on the land. N.C. Gen. Stat. §§ 1-340 to -351 (1983); *Commissioners of Roxboro*, 237 N.C. 143, 74 S.E.2d 436 (1953); *see* Dickson Commissioners, *Mistaken Improvers of Real Estate*, 64 N.C.L. Rev. 37 (1985). A deed issued at a tax foreclosure is color of title for the purpose of asserting betterments. *Harrison v. Darden*, 223 N.C. 364, 26 S.E.2d 860 (1943). Thus, while we find that plaintiffs are the rightful owners of Lot #50, they must compensate defendants for the improvements. Recognizing that this alternative is perhaps impractical, we point out that plaintiffs may opt to relinquish their estate to defendants, who in turn must pay plaintiffs the value of the property in its unimproved condition. G.S. § 1-347; *Barker v. Owen*, 93 N.C. 198 (1885). Plaintiffs are also entitled to the rents and profits from the property in its unimproved condition for the period of defendants' possession. G.S. § 1-341; *Harrison*, 223 N.C. 364, 26 S.E.2d 860. If plaintiffs fail to exercise one of these options, the value of the improvements becomes a lien and if not paid, a sale of the premises will be ordered. G.S. § 1-347; *Barker*, 93 N.C. 198.

We have examined defendants' other cross-assignments of error and found them to be without merit.

Thus, we remand this action to determine the value of the improvements made by defendants, the value of plaintiffs' property in its unimproved state and the rental value and profits derived from the property in its unimproved condition during the time of defendants' occupation.

Affirmed in part and reversed in part.

Judges PHILLIPS and COZORT concur.