UNITED STATES of America,
Plaintiff–Appellee,

v.

T.G. WHEDBEE, Jr.; Nancy Mann; Ruth Carole W. Cambio; Rosbon D.B. Whedbee, Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

RIDDICK INTERNATIONAL, INCORPORATED; Rosbon D.B. Whedbee, Defendants–Appellants.

Nos. 91–1064, 91–2124.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1992.

Decided May 8, 1992.

Rosbon D.B. Whedbee, Ahoskie, N.C., argued, for defendants-appellants.

Peter Richard Shedor, Jr., U.S. Dept. of Agriculture, Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., Thomas P. Swaim, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before HALL and LUTTIG, Circuit Judges, and SIMONS, Senior U.S. District Judge for the District of South Carolina, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellants, pursuant to state court judgments, took possession of a portion of the proceeds from the sale of property in which the United States claimed a security interest. The United States thereafter brought a conversion action against appellants to recover that portion of the proceeds. The district court entered summary judgment for the United States. We reverse.

### I.

This case arises out of a dispute between creditors over a portion of the proceeds from the sale of property formerly held by a bankrupt couple. On December 1, 1978, appellee, the United States, extended a $223,000 loan to Jerry W. Newsome and Temperance B. Newsome through the Farmers Home Administration (FmHA). As a condition of the loan, the Newsomes granted the United States a security interest in certain farm equipment, chattels, live stock, and crops. These security interests were perfected by the United States in late 1978 and early 1979 through the filing of financing statements. The Newsomes subsequently defaulted on their obligations to the United States, and on January 26, 1983, they filed for bankruptcy. Their chapter 11 proceeding was converted to a chapter 7 proceeding on May 17, 1984.

On July 8, 1984, the bankruptcy trustee abandoned certain farm equipment in which the FmHA held a security interest, and, on August 17, 1984, the United States Bankruptcy Court for the Eastern District of North Carolina issued an order lifting the automatic stay with respect to the equipment so that the United States could proceed with foreclosure. *See* 11 U.S.C. § 362. The United States scheduled the property to be sold at a public auction on December 1, 1984.

On November 22, 1984, before the public auction was conducted, the Newsomes' landlords (appellants T.G. Whedbee, Jr., Nancy Mann, and Ruth Carole W. Cambio) and their farm equipment dealer (appellant Riddick International, Inc. ("Riddick")) filed actions against the Newsomes in the Superior Court of Hertford County, North Carolina, and moved for orders of attachment on the abandoned farm equipment.[1] The Newsomes owed their landlords back rent in the amount of $6,500, and owed Riddick $10,500, the amount of their open account balance. Appellants did not join

---

1. Appellant Rosbon D.B. Whedbee is the attorney for all appellants, including himself.

the FmHA as a party in the state court proceedings, nor did the FmHA seek to intervene in those proceedings.[2] Because both the FmHA and appellants claimed a right to the proceeds from the sale of the farm equipment, however, appellants and the FmHA entered into a stipulation according to which the sale of the farm equipment would proceed as scheduled, and the auctioneer would deduct from the proceeds the $17,000 owed to appellants and pay that amount to the bankruptcy trustee pending further orders of the bankruptcy court.

On January 4, 1985, appellants filed amended complaints in state court, in order to move *in rem* against the proceeds from the sale of the Newsomes' property. Appellants again moved to have the proceeds attached. In an order entered March 20, 1985, the bankruptcy court modified and amended its earlier order lifting the automatic stay, and instructed the parties that any dispute between the United States and the Newsomes' other creditors over the proceeds from the sale of the farm equipment should be resolved in state court. Pursuant to orders of attachment issued by the state court, the auctioneer paid $17,000 into the registry of the court on April 9, 1985. On April 25, 1985, the state court entered default judgments in favor of appellants, and appellants took possession of the $17,000.

In May 1985, the United States filed continuations of its financing statements. The Newsomes were discharged from their debts on October 30, 1985.

More than three years later, on December 19, 1988, and July 10, 1989, respectively, the United States filed conversion actions against the landlords and Riddick in the United States District Court for the Eastern District of North Carolina, claiming that its security interest in the Newsomes' farm equipment entitled it to all of the proceeds from the sale of the equipment.[3] Both the United States and appellants moved for summary judgment. The district court denied appellants' motions, granted the United States' motions, and entered judgment for the United States. This appeal followed.

## II.

Appellants advance essentially two arguments in support of their claim to entitlement to the proceeds from the sale of the farm equipment. First, they contend that the security interests of the United States in the equipment lapsed before appellants filed their state court actions, and that the United States thereby lost any right to the property that it previously may have had. Second, they argue that even if the United States' security interests were still valid at the time of the state court actions, they are nonetheless entitled to the proceeds because they took dominion over the proceeds pursuant to lawful state court judgments.

## A.

The security interests of the United States in the Newsomes' property ordinarily would have expired in late 1983 and early 1984. *See* N.C.Gen.Stat. § 25–9–403(2) ("a filed financing statement is effective for a period of five years from the date of filing"). However, because the Newsomes filed for bankruptcy in January 1983, before these security interests expired, the security interests remained perfected "until termination of the insolvency proceedings and thereafter for a period of 60 days." *Id.* In granting the United States' motions for summary judgment, the district court concluded that the Newsome's "insolvency proceedings" terminat-

---

**2.** *See* N.C.Gen.Stat. § 1–440.43 ("[a]ny person other than the defendant who claims property which has been attached, or any person who has acquired a lien upon or an interest in such property" may "[a]pply to the court to have the attachment order dissolved or modified" or "[i]ntervene and secure possession of the property"); *id.* § 1A–1, Rule 24(a) ("anyone shall be permitted to intervene in an action" when "the applicant claims an interest relating to the prop-

erty or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest").

**3.** The statute of limitations for conversion actions brought by the United States is six years. 28 U.S.C. § 2415(b).

ed in October 1985 (when the Newsomes were discharged from their debts), and that the United States' security interests therefore never lapsed (the United States having filed continuations of its financing statements in May 1985).

Appellants argue that the "insolvency proceedings" terminated not in October 1985, when the Newsomes were discharged from their obligations, but in August 1984, at the latest, when, following the trustee's abandonment of the property, the bankruptcy court lifted the automatic stay and issued an order allowing the United States to foreclose on the property. Thus, according to appellants, the security interests of the United States expired in October 1984 (sixty days after the bankruptcy court lifted the automatic stay), which was seven months before the United States filed continuations of its financing statements. As a consequence, they argue, the United States did not hold a perfected security interest in the equipment when the defendants received a portion of the proceeds from the sale of the equipment in April 1985, and there was therefore no wrongful conversion of United States property.

Though it would appear that the phrase "termination of the insolvency proceedings" in section 9–403(2) of the North Carolina Uniform Commercial Code refers to discharge of the debtor, *see In re Laninga,* 51 B.R. 199 (N.D.Ill.1985) (interpreting identical language in section 9–403(2) of Illinois U.C.C.), we need not resolve this issue of statutory interpretation. Appellants' are entitled to judgment even if we accept the United States' interpretation of section 9–403(2), since their possession of the proceeds is not "unauthorized" under North Carolina law.

### B.

▮ Conversion, under North Carolina law, is defined as an unauthorized assump-

tion and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. *Peed v. Burleson's, Inc.,* 244 N.C. 437, 94 S.E.2d 351, 353 (1956).[4] A plaintiff in a conversion action (here, the United States) therefore must prove (1) its interest in the property and (2) the defendant's unauthorized dominion over the property. *Tugwell,* 779 F.2d at 7. Appellants contend that even if there is sufficient evidence to satisfy the first element of the tort of conversion, there is insufficient evidence to satisfy the second element, because appellants' dominion over the property at issue, which was acquired through the judgment of a state court of competent jurisdiction, was not unauthorized. We agree.

The United States takes the position that this case is controlled by *United States v. Tugwell.* In that case, the United States brought a conversion action against the purchaser of property in which the FmHA held a security interest. Though the purchaser "apparently was unaware of FmHA's security interest," the court held that the purchaser's "act of taking possession of the [property] with intent to acquire in it a proprietary interest that [the seller] was not empowered to give represents sufficiently serious unauthorized dominion over the [property] to fulfill the second element of the tort." *Id.; see also* N.C.Gen.Stat. § 25–9–306 cmt. 3 ("[W]hen a debtor makes an unauthorized disposition of collateral, ... the secured party may repossess the collateral from [the transferee] or in an appropriate case maintain an action for conversion."). The United States argues that here, as in *Tugwell,* "FmHA did not authorize the transfer of its collateral," and "the party effecting the transfer was not empowered to divest FmHA of its property." Appellee's Br. at 12.[5]

---

**4.** The rights of the United States under FmHA loan programs are governed by federal law, which in turn incorporates applicable state law. *United States v. Tugwell,* 779 F.2d 5, 7 (4th Cir.1985) (per curiam) (citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)).

**5.** The United States does not specify whether it regards "the party effecting the transfer" as the court, the debtors, or the appellants.

We believe that the disposition of this case is governed not by *Tugwell* but by the North Carolina Court of Appeals' decision in *Drummond v. Cordell,* 73 N.C.App. 438, 326 S.E.2d 292 (1985), *aff'd,* 315 N.C. 385, 337 S.E.2d 850 (1986), a decision cited neither by appellants nor by the United States. In *Drummond,* an automobile was sold pursuant to a small claims judgment in order to satisfy a storage lien. The owner of the automobile instituted a collateral action against the seller, seeking to set aside the small claims judgment on the grounds that she had not received notice of the judicial hearing for enforcement of the storage lien. The owner also sought damages for conversion of the automobile. The North Carolina Court of Appeals held that no conversion action could lie, because the defendant's sale of the automobile was authorized by a "proper" court judgment:

> Because the [defendant] had authority to sell the vehicle to collect storage charges, plaintiff has no claim for conversion, since conversion is "an *unauthorized* assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."

*Id.* at 293 (quoting *Gallimore v. Sink,* 27 N.C.App. 65, 218 S.E.2d 181, 183 (1975)).

■ The United States has not sought to set aside the state court judgments pursuant to which appellants took possession of the contested proceeds on any grounds, including that the United States was an indispensable party to the actions that gave rise to those judgments.[6] Nor does the United States allege that those state court judgments are, for any reason, invalid. Under *Drummond,* dominion over property that is acquired pursuant to a valid judgment of a court of law is "authorized" for purposes of North Carolina's law of conversion. The United States therefore cannot satisfy the requirement that the defendant's dominion over the allegedly converted property be "unauthorized."

The United States argues, in reliance upon a number of North Carolina statutes,[7] that the state court judgments cannot affect the interests of the United States in the proceeds of the auctioned property, because the United States was not served by appellants in the state court actions. This is true but irrelevant. The issue here is not whether the United States may collaterally attack the state court judgments pursuant to which appellants obtained the proceeds in question. The only issue before this court is whether the United States can make out an entirely separate cause of action for conversion of the proceeds. For the reason stated, we hold that it cannot.[8]

## CONCLUSION

Appellants obtained dominion over the proceeds in question pursuant to a lawful

---

**6.** Under Rule 19 of the North Carolina Rules of Civil Procedure, parties who are "united in interest" must be joined as plaintiffs or defendants. N.C.Gen.Stat. § 1A-1, Rule 19(a). A party is "united in interest" with another party "when that person's presence is necessary in order for the court to determine the claim before it without prejudicing the rights of a party before it or the rights of others not before the court." *Ludwig v. Hart,* 40 N.C.App. 188, 252 S.E.2d 270, 272 *disc. rev. denied,* 297 N.C. 454, 256 S.E.2d 807 (1979). "A judgment which is determinative of a claim arising in an action in which necessary parties have not been joined is null and void," *Rice v. Randolph,* 96 N.C.App. 112, 384 S.E.2d 295, 297 (1989), and "[a] void judgment may be attacked directly or collaterally by any party adversely affected thereby," *Edwards v. Brown's Cabinets,* 63 N.C.App. 524, 305 S.E.2d 765, 769, *cert. denied,* 309 N.C. 632, 308 S.E.2d 64 (1983). A void judgment may ordinarily be attacked at any time. *See Jenkins v.*

*Richmond County,* 99 N.C.App. 717, 394 S.E.2d 258, 261–62 (1990) (refusing to apply laches to motion to vacate void judgment), *disc. rev. denied,* 328 N.C. 572, 403 S.E.2d 512 (1991).

**7.** *See, e.g.,* N.C.Gen.Stat. § 1–75.3(b) (judgment may be rendered against party personally only if there is "[p]ersonal service or substituted personal service of summons, or service of publication of a notice of service of pro 5616 26 8 cess"); *id.* § 1–75.3(c) ("a judgment in rem or quasi in rem ... may affect the interests in the status, property or thing of all persons *served*" (emphasis added)).

**8.** Because we conclude that the United States cannot prove that appellants unlawfully converted property of the United States, we need not consider appellants' alternative arguments for reversal or their argument that they are entitled to a set-off should the United States prevail.

judgment of a North Carolina court. Because their possession of the proceeds was not unauthorized, there was no tortious conversion of United States property under the laws of North Carolina. Accordingly, the district court's award of summary judgment for the United States is reversed, and the case is remanded to the district court with instructions to enter summary judgment for appellants. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

REVERSED AND REMANDED.