**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

METRIC CONSTRUCTORS,
INCORPORATED,
Plaintiff-Appellant,

and

J.A. JONES, INCORPORATED,
Plaintiff,

v.

THE BANK OF TOKYO-MITSUBISHI,

LIMITED, NEW YORK BRANCH;
BARCLAYS BANK PLC, NEW YORK
BRANCH; BAYERISCHE VEREINSBANK,
AG, NEW YORK BRANCH; DAI-ICHI
KANGYO BANK, LIMITED, NEW YORK
BRANCH; MEES PIERSON NV, NEW
YORK AGENCY; CREDIT LOCAL DE
FRANCE; BANK OF TOKYO-MITSUBISHI
TRUST COMPANY,
Defendants-Appellees.

No. 99-2330

METRIC CONSTRUCTORS,
INCORPORATED,
Plaintiff-Appellee,

and

J.A. JONES, INCORPORATED,
Plaintiff,

v.

THE BANK OF TOKYO-MITSUBISHI,

No. 99-2379

LIMITED, NEW YORK BRANCH;
BARCLAYS BANK PLC, NEW YORK
BRANCH, BAYERISCHE VEREINSBANK,
AG, NEW YORK BRANCH; DAI-ICHI
KANGYO BANK, LIMITED, NEW YORK
BRANCH; MEES PIERSON NV, NEW
YORK AGENCY; CREDIT LOCAL DE
FRANCE; BANK OF TOKYO-MITSUBISHI
TRUST COMPANY,
Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-369-5-BR)

Argued: June 8, 2000

Decided: September 13, 2000

Before MURNAGHAN,* WILLIAMS, and MICHAEL,
Circuit Judges.

_____

*Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

2

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Douglas Leo Patin, SPRIGGS & HOLLINGSWORTH, Washington, D.C., for Appellant. Thomas Joseph Hall, CHAD-BOURNE & PARKE, L.L.P., New York, New York, for Appellees. **ON BRIEF:** Jeffrey R. Gans, SPRIGGS & HOLLINGSWORTH, Washington, D.C.; James P. McLoughlin, Gregory J. Murphy, MOORE & VAN ALLEN, Charlotte, North Carolina, for Appellant. Brian A. Miller, CHADBOURNE & PARKE, L.L.P., New York, New York; L. Neal Ellis, Jr., Albert Diaz, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-appellant, Metric Constructors, Inc. (Metric), a construction company, sued certain banks (collectively, the "Banks"), including defendant-appellees The Bank of Tokyo-Mitsubishi, Ltd. and Bank of Tokyo-Mitsubishi Trust Company (together, the "Bank of Tokyo"), after the Banks stopped funding the construction of facilities that would convert garbage to energy (the "Project") in North Carolina. Metric claims that the Banks allowed it to continue working when they knew the Project was in jeopardy. After the Project failed, Metric sued the Banks to recover payment for some of its construction work, and the Banks counterclaimed. The district court granted summary judgment to the Banks on Metric's claims and to Metric on the Banks' counterclaims. We affirm, except for the award of summary judgment to the Banks on Metric's claim for unjust enrichment.

3

We vacate the summary judgment on that claim and remand for further proceedings.

I.

In May 1995 Metric and Carolina Energy Limited Partnership (CELP) entered into an $86 million Turnkey Design and Construction Agreement (Construction Agreement) under which Metric was to build the Project for CELP at two sites in North Carolina.* The Construction Agreement provided for payment to Metric under the following procedures. Each month Metric submitted to CELP an application for payment for work performed during the previous month. The application included a detailed description of the work done on the Project, measured according to "work milestones." Metric also had to make a number of certifications on each application, including a statement that the work was performed in accordance with the Construction Agreement. Lien waivers from Metric and its subcontractors were also required to insure the effective release of all mechanic and materialmen's liens for the month for which payment was due. The application had to be reviewed by an independent engineer for compliance with the terms of the Construction Agreement. CELP and the engineer had fifteen days to review an application for payment. If both approved, CELP had ten days to pay Metric.

CELP arranged financing for the Project several months after it entered into the Construction Agreement with Metric. On July 1, 1995, the Lenoir County Authority and CELP entered into a loan agreement whereby the Authority agreed to lend CELP the proceeds of an $86 million tax exempt bond sale. In addition, CELP itself issued $6.5 million in resource recovery bonds. Finally, CELP's limited partners provided certain equity funding for the Project.

In a Credit and Reimbursement Agreement (Credit Agreement) between CELP and the Banks, the Banks issued letters of credit as security for the repayment of the bonds in the event CELP defaulted. The Credit Agreement also designated one of the Banks, the Bank of Tokyo, to act as "Account Agent," a role which, among other things,

_____

*CELP is not a party in this case.

4

gave the Bank of Tokyo responsibility for disbursing the funds for Project construction to CELP. The Credit Agreement set out a detailed application process that governed the Banks' disbursement of monies to CELP. Any disbursement to CELP was subject to seventeen conditions, including a certification by an independent engineer that the Project would meet its debt service ratio, that no material adverse changes had occurred since the last payment to CELP, and that lien waivers had been executed by Metric and its subcontractors. Last, the Credit Agreement provided that the Bank of Tokyo did not assume obligations to third parties:

> Account Agent . . . does not assume and shall not be deemed to have assumed any obligation towards or relationship of trust with, or any fiduciary relationship with, or for Borrower, Agent, any of the other Secured Parties or any other party to any Project Document or Bond Document.

Along with the Credit Agreement, the Banks and CELP entered into an Assignment and Security Agreement (Security Agreement). Under the Security Agreement CELP conveyed to the Banks a first priority security interest in Project documents, Project accounts, and equipment. The Security Agreement provided that the Banks (including the Bank of Tokyo, as Agent) assumed no implied duties or obligations to third parties:

> Agent undertakes to perform or to observe only such of its agreements and obligations as are specifically set forth in this Security Agreement or any other Credit Instrument, and no implied agreements, covenants or obligations with respect to Debtor, any Affiliate of Debtor or any other party to any of the Assigned Agreements shall be read into this Security Agreement against Agent or any of the Secured Parties [i.e., the Banks].

The Banks were not parties to the Construction Agreement between Metric and CELP, and Metric was not a party to the Credit Agreement between CELP and the Banks.

In a separate agreement with CELP, Metric executed a Consent to Assignment of Agreement (Consent Agreement) in which Metric con-

5

sented to CELP's assignment of a security interest to the Banks. Again, the Consent Agreement provided that the Banks undertook no fiduciary or other obligations with respect to Metric.

Metric began construction of the Project in January of 1996. Metric's first fifteen pay applications were approved without major problems. Serious concerns, however, arose over an October 1996 application. This application's lien waiver indicated that there were a number of exceptions. However, the exceptions were not attached to the application as required by the Construction Agreement. CELP approved the October 1996 payment application despite this deficiency, but the Banks balked. The Banks asked CELP to obtain assurances from Metric that there were no exceptions to the lien waiver. After several days, Metric sent the Banks a copy of the lien waiver that stated there were no exceptions to be listed. The Banks then transferred payment to Metric's account. Some three days later, however, Metric prepared an attachment that listed certain exceptions to the lien waiver and sent it to the Banks.

Later in October 1996 the Banks "became increasingly alarmed about the economic viability of the Project." Much of this concern came from construction delays and expenditures that were over budget. In late November 1996 a lawyer for the Bank of Tokyo, Nicholas R. Battista, determined that the debt service coverage ratio had not been met. In addition, Battista determined that several of the other seventeen conditions required for payment of Metric under the Credit Agreement had not been met, including the absence of defaults and the absence of material adverse changes. On November 22 Battista conveyed his concerns to CELP. Without notifying Metric of these problems, CELP and the Banks entered into extensive discussions (or negotiations) in late November and early December 1996 aimed at keeping the Project afloat. To this end, Battista arranged for the Banks to place funds in CELP's Project accounts so that obligations could be paid immediately, if negotiations proved successful. The negotiations fell through, however. Within a few days, CELP admitted that the Project could not meet the required debt service coverage ratio. Further, CELP essentially conceded that under the current financial structuring the Project would not be able to pay all of its debts.

6

Metric was without knowledge of these negotiations, and it continued to work through November and the first part of December 1996. On December 13, 1996, CELP notified Metric that the Banks were suspending funding. Metric stopped construction work immediately, and it was not paid for the work performed in November and the first half of December of 1996. Metric claims it is owed over $16 million for this work.

In May 1997 Metric sued the Banks in federal court. By the time it filed an amended complaint, Metric was seeking damages for conversion, breach of contract, tortious interference with contract, unfair and deceptive trade practices, breach of fiduciary duty and civil conspiracy to breach fiduciary duty, unjust enrichment, constructive trust, and equitable lien. The Banks asserted four counterclaims arising out of Metric's October 1996 application for payment: fraud, negligent misrepresentation, unfair and deceptive trade practices, and conversion. The district court dismissed Metric's claims for tortious interference with contract and breach of contract. The balance of Metric's claims were rejected on summary judgment, as were the Banks' counterclaims. The district court's summary judgment order was based on its adoption of the magistrate judge's memorandum and recommendation. The magistrate judge concluded that Metric's unfair trade practice and breach of fiduciary duty claims failed under the express language of the Project agreements. In addition, the magistrate judge concluded that Metric did not have an unjust enrichment claim because the Banks suffered net losses on the Project. Finally, the magistrate judge concluded that the Banks' counterclaims should be dismissed on several grounds, one of which was that the Banks suffered no injury from Metric's tangled handling of the October 1996 application. Metric appeals the summary judgment on three of its claims, those asserting unfair and deceptive trade practices, breach of fiduciary duty, and unjust enrichment. The Banks cross-appeal the rejection of their counterclaims, except the one for fraud.

II.

A.

Metric argues that the district court erred in dismissing its unfair trade practice and breach of fiduciary duty claims. We disagree. Both

7

of these claims run up against the plain language of the agreements relating to the Project's construction and financing. These agreements expressly laid out the duties the parties owed to one another. Metric was aware, at least through the Consent Agreement, that the Banks disclaimed any fiduciary obligations to Metric. Moreover, Metric was not a party to the agreements governing the financing of the Project, and those agreements did not impose any duty on the Banks with respect to Metric.

As for Metric's unfair trade practice claim, the magistrate judge concluded that the Banks' failure to inform Metric at the earliest moment the Project was in trouble was not an unfair or deceptive trade practice because "nothing would have required the Banks to provide [payment] assurances [to Metric] in that Metric had no contractual rights against the Banks." The magistrate judge added, "in light of the fact that these are sophisticated parties who were involved in what appears to this court to have been an arm's-length business transaction in all respects, the court . . . fails to see how the Banks in any way misled Metric . . . or how the Banks' actions rose to the level of unfair or deceptive conduct." Under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat.§ 75-1.1, a plaintiff must show (1) an unfair or deceptive act or practice or an unfair method of competition (2) in or affecting commerce (3) that proximately caused actual injury to the plaintiff. See Spartan Leasing, Inc. v. Polland, 460 S.E.2d 476, 482 (N.C. App. 1991). Metric alleges that the Banks' behavior satisfied the first element in several ways: (1) the Banks put CELP in default in order to use funds designated for Metric as a bargaining chip in the restructuring negotiations with CELP, (2) the Banks processed the November payment application in a deceptive manner, (3) industry standards imposed a duty on the Banks to warn Metric of the Project's potential failure, and (4) the Banks' promise on an earlier project to keep Metric informed created a duty to keep Metric informed on the current Project. We agree with the magistrate judge that these allegations, when measured against the express terms of the Project financing agreements, do not give rise to unfair or deceptive practices under the North Carolina statute. The agreements make clear that the Banks disclaimed any duty to Metric. Moreover, Metric was not a party to the Credit Agreement between CELP and the Banks, and that is the agreement that governed the disbursement of funds for Project construction to CELP. As the magis-

8

trate judge correctly concluded, "[t]he Banks[were] exercis[ing] their rights under their agreements with CELP when they suspended funding for the Project."

We turn to Metric's fiduciary duty claim. Under North Carolina law a fiduciary relationship exists when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Abbitt v. Gregory, 160 S.E. 896, 906 (N.C. 1931). See also Curl v. Key, 316 S.E.2d 272, 275 (N.C. 1984); Frizzell Constr. Co. v. First Citizens Bank & Trust Co. , 759 F. Supp. 286, 290 (E.D.N.C. 1991), aff'd, 972 F.2d 339 (4th Cir. 1992). The magistrate judge concluded that Metric failed to "set forth . . . evidence of the existence of a fiduciary relationship." Metric expressly consented (in the Consent Agreement) to the Banks' disclaimer of any fiduciary relationship toward it. Moreover, as the magistrate noted, Metric has not proffered any evidence of the existence of a fiduciary relationship between it and the Banks.

We conclude that the district court properly entered summary judgment dismissing Metric's unfair trade practice and breach of fiduciary duty claims.

B.

Metric's final argument is that the district court erred in granting summary judgment to the Banks on Metric's unjust enrichment claim. Earlier in the case the district court ruled that Metric's unjust enrichment claim survived the Banks' motion to dismiss under Fed. R. Civ. P. 12(b)(6). In its December 5, 1997, order the district court said that the claim "could have merit" if Metric "among other factors . . . can show that the Banks' security has been fulfilled or even exceeded by reason of the value of the incomplete project." When the summary judgment motions were referred to the magistrate judge, that judge read the district court's statement to mean the following: unless the Banks enjoyed a net gain on the Project, Metric could not have been unjustly enriched. Because the Banks suffered net losses of over $27 million, the magistrate judge said that he "fel[t] compelled by the District Court's December 5, 1997 Order to find that[Metric's] unjust enrichment claim is without merit." The magistrate judge went on to

9

say: "this court is not suggesting that a claim for unjust enrichment is never viable in a net loss context. Rather, under the particular facts of this case, and in light of . . . language in the District Court's [earlier] Order, this court finds that the Banks have not been unjustly enriched." Because the magistrate judge did not cite any "particular facts" other than those relating to the Banks' losses, we must conclude that he recommended the rejection of Metric's unjust enrichment claim solely because Metric could not show that the Banks had a net gain. Based on the magistrate judge's recommendation, the district court granted summary judgment to the Banks on Metric's unjust enrichment claim.

To establish a claim for unjust enrichment under North Carolina law, a plaintiff must show that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit. See Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988). Obviously missing from this list is the ground upon which the district court appeared to rest its award of summary judgment-- that the defendant must also enjoy a net gain in the underlying transaction. As the magistrate judge recognized, no North Carolina court has concluded that a net gain by the defendant is a necessary element of a claim for unjust enrichment. In light of this, it is not for us to add the showing of a net gain as a requirement. We therefore conclude that the district court erred in granting summary judgment to the Banks on Metric's claim for unjust enrichment solely on the ground that the Banks suffered a net loss on the Project. The summary judgment on the unjust enrichment claim is vacated, and the case is remanded for further proceedings on this claim, including further proceedings on summary judgment, if that is appropriate. In reaching this decision, we offer no opinion as to the applicability or merits of an unjust enrichment claim in the circumstances of this case.

III.

The Banks cross-appeal the award of summary judgment to Metric on their counterclaims for negligent misrepresentation, unfair and deceptive trade practices, and conversion. Those counterclaims assert wrongdoing by Metric in its preparation and submission of the October 1996 application for payment. As the magistrate judge noted, each

10

of these claims requires the Banks to show that they suffered damage at the hands of Metric or that their property was taken by Metric. See Forbes v. Par Ten Group, Inc., 394 S.E.2d 643, 648 (N.C. App. 1990) (negligent misrepresentation); Spartan Leasing , 400 S.E.2d at 482 (unfair and deceptive trade practices); United States v. Whedbee, 964 F.2d 330, 333 (4th Cir. 1992) (conversion). The Banks proffered no evidence that they were damaged by any irregularities in Metric's October 1996 pay application or that Metric converted their property. The summary judgment dismissing the Banks' counterclaims was therefore proper.

IV.

The district court's order awarding summary judgment to the Banks on Metric's claims is affirmed except for the unjust enrichment claim. The summary judgment on Metric's claim against the Banks for unjust enrichment is vacated, and the case is remanded for further proceedings on that claim only. The district court's order awarding summary judgment to Metric on the Banks' counterclaims is affirmed.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

11