JAMES B. CURL, JR., BY AND THROUGH HIS GUARDIAN AD LITEM, FRED CURL, JUDY C. CARPENTER CUMMINGS, PATTY C. THURSTON, AND VICKI C. JOHNSON v. WALTER JACK KEY AND WIFE, MARGARET KEY, WILLIAM C. RAY, TRUSTEE, AND W. MARCUS SHORT

No. 533PA83

(Filed 5 June 1984)

1. **Cancellation and Rescission of Instruments § 2.2— action to set aside deed— confidential relationship—failure to apply correct law**

In an action to set aside a deed conveying plaintiffs' family home on the ground that defendant stood in a confidential relationship to plaintiffs and exerted undue influence upon them in obtaining the deed, the evidence established that a confidential or fiduciary relationship existed between plaintiffs and defendant at the time the deed was executed, and the trial court erred in failing to apply the law applicable to confidential relationships to defendant's actions, where the evidence showed that plaintiffs inherited the family home after their father died and lived there with the common-law wife of deceased; defendant had been the best friend of plaintiffs' father and plaintiffs had been closely acquainted with defendant all their lives; plaintiffs trusted and relied on defendant; and after plaintiffs' father died, defendant lived for some time in the house with plaintiffs.

2. **Deeds § 8.1— consideration—forbearance to bring personal injury action**

An alleged forbearance to bring a personal injury action against plaintiffs did not constitute consideration for the execution of a deed by plaintiffs conveying their family home to defendant where defendant did not release his claim against plaintiffs either orally or in writing, and where defendant has in fact instituted an action for personal injuries against plaintiffs.

Justice FRYE did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, reported at 64 N.C. App. 139, 306 S.E. 2d 818 (1983), affirming judgment in favor of defendants filed 27 August 1982 by *John, J.*, District Court, GUILFORD County. Heard in the Supreme Court 13 March 1984.

This action was instituted on 29 November 1978 by the children of James Curl, Sr. to set aside a deed dated 14 September 1977 conveying their family home to the defendants Key. The plaintiffs alleged that Jack Key stood in a confidential relationship to them and exerted undue influence upon them in obtaining the deed. On 4 January 1980, the plaintiffs James B. Curl, Jr. and Vicki C. Johnson moved for summary judgment on the grounds that they were infants at the time they signed the deed. On 22 December 1980, Judge Alexander-Ralston ruled in their favor. The deed to the defendants Key, as well as a deed of trust dated 14 September 1977 conveying the same property from the Keys to defendants Ray and Short, was set aside as to the interests of James B. Curl, Jr. and Vicki C. Johnson. This judgment was not appealed, and these two plaintiffs are not before this Court. On 24 March 1982, the trial court entered judgment against the remaining plaintiffs. The Court of Appeals affirmed.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Walter L. Hannah and John P. Daniel, for plaintiff appellants.*

*H. Marshall Simpson for defendant appellees.*

MARTIN, Justice.

The proper standard for review in this case is set forth in the Court of Appeals opinion: "Findings of fact made by the court in a nonjury trial have the force and effect of a jury verdict and are conclusive on appeal *if there is evidence to support them,* although the evidence might have supported findings to the contrary." 64 N.C. App. at 141-42, 306 S.E. 2d at 820 (emphasis added).

In his role as fact finder, Judge John made, inter alia, the following findings:

11. The Court finds further that all grantors who executed the deed hereinabove referred to did so *freely and*

*voluntarily and with a full knowledge and understanding of the consequences of their actions.* The Court finds that W. Marcus Short *fully explained the effect of the execution of the deed to all grantors* and the Court finds as a fact that *no facts were concealed by any defendant* from the plaintiffs-grantors. The Court also finds that there was *no undue influence exercised by any defendant on any plaintiff-grantor* in the execution of the deed.

12. That the deed signed by the plaintiffs not only recited consideration, but *there was actual consideration for the conveyance* by plaintiffs-grantors in the forbearance by Walter Jack Key from instituting suit against all owners of the property to recover his damages.

13. The Court also finds that there was *no confidential or fiduciary relationship existing between the plaintiffs and the defendants,* and all parties acted in good faith in the execution of the deed. It is further found that there was no attempt by either defendant to deceive *or to breach any fiduciary or confidential obligation owed to the plaintiffs-grantors,* nor was there *any inequality of bargaining power.*

(Emphases added.)

[1] This appeal turns upon the question of whether there is evidence to support finding 13 above. Our review of the transcript leads us to the conclusion that the finding (actually a conclusion of law) is unsupported by the evidence. All the evidence tended to show that a confidential or fiduciary relationship did exist between the plaintiffs and defendant Jack Key at the time the deed was executed. In part, the plaintiffs' evidence disclosed:

After James B. Curl, Sr. died intestate in December 1975, his children inherited the family home in rural Guilford County. Living alone on the property after his death, the plaintiffs and Lottie Curl, common-law wife of the deceased, were subjected to harassment, threats, and occasional physical abuse from various "outsiders," relatives with whom they did not get along. The situation is summarized in the words of James Curl, Jr.: "Well, a bunch of people was coming down there beating on us, bossing us, just taking over the house. . . ." At the time of these events, the Curl children were 16, 17, 18, and 21 years of age, respectively.

The plaintiffs had been closely acquainted with Jack Key all of their lives. Known to them as "Uncle Jack," Key had been their father's best friend. They continued to regard him as "a special friend of the family." Key offered to help plaintiffs with their problems in dealing with harassment from outsiders, claiming he could keep troublemakers away if each of the plaintiffs would sign a paper—"a peace paper giving him the right to kick anybody off the land that come there causing any disturbance." Lottie Curl testified that Key would "have the rights 'cause he'd be a man person. He said he could take care of it better than a woman. We was giving him the rights to help us out to have peace. He said we'd live happy, y'all can live happily after we sign these papers."

It was only later, when she went to pay taxes on the property, that Lottie Curl first learned the truth about the "peace paper" they had each signed:

[A]nd the lady that I went in front of—I don't know her name—she said, honey, said you don't have a place to pay taxes on. I said what are you talking about? She said you sold your place to Mr. Jack Key. I said for heaven's sake, I haven't sold anything. She said, well, I'm sorry, Honey, the deed, the paper is here stating you sold your property. So she wouldn't let me pay no taxes.

Concerning the actual signing of the deed, each of the signatories recalled signing only "a blank piece of paper with six lines." Other than the parties, there were no witnesses present. Attorney Marcus Short prepared the deed, which was signed in his office. When Short attempted to explain the procedure, he was silenced by defendant Key who, having transported plaintiffs to the lawyer's office himself, claimed "we done talked it all over, explained it to each other, and we all know what we're going through with."

Jack Key told them they had signed a "peace paper" at Mr. Short's office. Judy Curl Cummings, who was about twenty years old when the deed was signed, testified that Jack Key was a good friend of the family's. She trusted Jack Key.

James Curl, Jr., who was about fifteen years old when the deed was signed, testified that he had known Jack Key as a friend and relied upon him for as long as he could remember.

The plaintiffs had confidence in Jack Key; he was their friend; they all trusted him and believed that he wanted to help them live in peace in their home.

Jack Key himself testified that he had known the Curl family for years. Mr. Curl had taught him to lay brick and they worked together. After Mr. Curl died, Jack Key lived for some time in the house with Lottie Curl and the children. He was a friend of the family's.

We note that prior to the commencement of the trial, Judge John granted defense counsel's motion to have all the witnesses excluded from the courtroom. Thereupon, seven witnesses testified for the plaintiffs, rendering with virtual unanimity the foregoing summary of the evidence.

Evidence for the appellees tended to show that defendant Key lived for a period of time in the plaintiffs' family home and while there was seriously injured as he descended the stairs to the basement. He thereafter informed plaintiffs that they were responsible for his injuries. According to Key, they resisted his demands for damages but later "volunteered" to convey their house to him in settlement of his claim.

Defendant Key testified, concerning the occasion of the execution of the deed, that attorney Short explained to plaintiffs and their stepmother that by signing the deed they would be conveying their house to Key in settlement of his claim for injuries sustained in July 1976, and the plaintiffs and Ms. Curl agreed that this was their desire. Thereupon, they executed a deed for their home to Key and his wife. The Keys shortly thereafter executed a deed of trust to William C. Ray, as trustee, to secure a $4,000 promissory note to Mr. Short in payment of his attorney's fees.

None of appellees' evidence contradicts the conclusion that there was a fiduciary or confidential relationship between plaintiffs and Jack Key.

The trial court erred in finding that no fiduciary or confidential relationship existed between plaintiffs and Jack Key. Because of this error by the trial court, it failed to apply the proper law to the facts of this transaction. The applicable law is as stated by Justice Lake:

> Where a transferee of property stands in a confidential or fiduciary relationship to the transferor, it is the duty of the transferee to exercise the utmost good faith in the transaction and to disclose to the transferor all material facts relating thereto and his failure to do constitutes fraud. . . . Such a relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." . . . Intent to deceive is not an essential element of such constructive fraud. . . . Any transaction between persons so situated is "watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party."

*Link v. Link,* 278 N.C. 181, 192, 179 S.E. 2d 697, 704 (1971) (citations omitted). The trial court failed to apply this standard to defendant Jack Key's conduct. For this error, there must be a new trial.

[2] Defendants also argue that the alleged release of Jack Key's personal injury claim constituted consideration to plaintiffs for the execution of the deed. With respect to this, attorney Short testified as follows:

> Q. Did you execute, have Mr. Key execute a release to these people in settlement of this matter?
>
> A. I did not.
>
> Q. Did you advise them that Mr. Key could still turn around and sue them again even though they had conveyed this property without a release?
>
> A. I didn't advise them of that, no.

The issue of the alleged release was neither disclosed to plaintiffs nor discussed with them. At no time did anyone suggest that the plaintiffs retain an attorney to advise them in this regard. Nor did Mr. Short discuss the issue of possession of the property—"that they would have to leave after they conveyed or anything like that." Key did not release his claim, either orally or in writing.

We hold that the evidence fails to support the conclusion of the trial court that forbearance to bring the suit constituted consideration for the execution of the deed. In fact, counsel conceded at oral argument that a suit for personal injuries against plaintiffs has been instituted by Jack Key.

At the heart of the matter is the universal principle that reality of assent is essential to the validity of a deed. A party must not only be mentally competent; he must exercise his will freely and understandingly. 25 Am. Jur. 2d *Duress and Undue Influence* § 40 (1966). Undue influence is the exercise of an improper influence over the mind and will of another to such an extent that the action is not that of a free agent. *Lee v. Ledbetter*, 229 N.C. 330, 49 S.E. 2d 634 (1948). It is the unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare. Restatement (Second) of Contracts § 177(1) (1981). Confidential relationships are not limited to a purely legal setting but may be found to exist in situations which are moral, social, domestic, or merely personal. *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896 (1931). It is equally well settled that "[a] course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party." *Rhodes v. Jones*, 232 N.C. 547, 548, 61 S.E. 2d 725, 726 (1950). *See McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615 (1943).

Plaintiffs are entitled to a new trial. The decision of the Court of Appeals is reversed and the case is remanded to that court for further remand to the superior court for a new trial.

Reversed and remanded.

Justice FRYE did not participate in the consideration or decision of this case.