LARRY D. COPPLEY, Plaintiff v. MONA BROCK COPPLEY, Defendant

No. COA97-10

(Filed 3 March 1998)

**1. Courts § 111 (NCI4th)— failure to record hearing—not prejudicial error**

A hearing on defendant's Rule 60(b) motion to set aside a domestic consent order was a trial within the meaning of N.C.G.S. § 7A-198(a) and, in light of the gravity of the allegations, the trial court erred by not recording those proceedings. However, there was no prejudice because the record includes both parties' versions of those proceedings.

**2. Divorce and Separation § 10 (NCI4th)— consent agreement—coercion and duress—motion to set aside**

The trial court abused its discretion in denying defendant's motion to set aside a domestic consent order where it was clear that defendant was in a vulnerable position and at the mercy of plaintiff, who determined her rights in regard to her children; that plaintiff engaged in subtle manipulation of defendant in that vulnerable position by threatening defendant's relationship with her children if she did not sign the consent order and go along with his terms for custody, support, and distribution of the marital property; and that defendant was thereby robbed of taking action of her own free will, preventing the giving of true consent. There was no error in the trial court's findings and conclusions regarding the absence of fraud and misrepresentation, but the findings did not support the conclusion that there was insufficient evidence that the consent order was the result of misconduct.

Appeal by defendant from orders entered 26 January and 7 June 1996 by Judge James M. Honeycutt in Davidson County District Court. Heard in the Court of Appeals 9 September 1997.

*Wilson, Biesecker, Tripp & Sink, by Max R. Rodden, for plaintiff-appellee.*

*Hamrick & Associates, by Diane Q. Hamrick, and Edward P. Hausle, P.A., by Edward P. Hausle, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Plaintiff Larry D. Coppley and defendant Mona Brock Coppley were married on 19 November 1978. They are the parents of two minor children, Nicholas and Adam. Plaintiff filed a complaint on 26 April 1995 seeking sole custody of the minor children, child support, sequestration of the marital residence, and equitable distribution. On 3 May 1995, Judge James M. Honeycutt entered a consent order in Davidson County District Court, which purported to resolve all claims of the parties. These proceedings were not recorded.

After being denied visitation or contact with her children subsequent to the entry of the consent order, defendant filed a motion to set aside the 3 May 1995 consent order. Defendant alleged that plaintiff had engaged in fraud, misrepresentation and misconduct to induce her to enter into the consent order. This motion came on for hearing before Judge Honeycutt during the 13 September 1995 civil session of Davidson County District Court. Although defendant requested that the hearing be recorded on the court's recording equipment, no recording of the proceeding has ever been located, nor has any evidence been presented indicating that the proceedings were recorded.

The testimony of defendant and her two witnesses tended to show the following. On 22 April 1995, after plaintiff discovered defendant's marital infidelity, plaintiff insisted and defendant agreed to an immediate separation. Plaintiff also insisted that the two minor children remain with him. Defendant would be given visitation provided that she complied with plaintiff's demands and did not seek custody of the children. At plaintiff's insistence, on that same evening, defendant prepared a handwritten list of items that she wanted from the marital home. On a separate sheet of paper, plaintiff wrote down some provisions for their separation.

Both parties signed the papers and had them notarized. After having the documents notarized, defendant gave them to plaintiff, who refused to give her a copy. Although the list prepared by defendant did not contain some of the items that defendant wanted, she felt bound by it. Plaintiff told defendant that if she contacted an attorney, he would drag her and the minor children "through the mud."

After defendant left the marital residence, plaintiff immediately changed the locks and security codes at the residence. Plaintiff also closed all of the couple's joint savings and checking accounts. On 24

April 1995, plaintiff telephoned defendant at work and requested that she prepare a list of the couple's monthly bills, as she had handled such matters in the past. Defendant prepared the list of bills and took it by the marital residence on 25 April 1995. When defendant attempted to stay, plaintiff refused to let her do so. In fact, all of defendant's attempts to return to the marital home or see the minor children were foiled by plaintiff.

The parties and some relatives met at a church on 27 April 1995 to discuss the previous days' events and the possibility of reconciliation. Plaintiff was not responsive to any suggestion of reconciliation. Defendant's mother recommended that defendant get an attorney, but she did not do so. The parties and some of their relatives met a second time on 2 May 1995 to discuss child custody, visitation and support. Plaintiff remained adamant that he retain custody of the children, but agreed to allow defendant visitation at his discretion. Defendant does not recall signing any papers at this meeting. During this meeting, defendant agreed to pay $300.00 per month for support of the minor children. Although plaintiff had already instituted this action, he did not tell defendant. Instead, he told her that, on the following day, they needed to meet to sign some papers.

On 3 May 1995, the parties met at Wachovia Bank in Lexington, North Carolina. Defendant was alone, because she thought that she was going to a magistrate's office to sign some papers. Instead, the parties met at the bank and walked to an office building next to it, which was, in fact, the office of plaintiff's attorney. When defendant found out that plaintiff had an attorney and had filed a lawsuit, she asked plaintiff if she needed to call her father. Plaintiff told her that she did not need to do so. Plaintiff's attorney told defendant to sign the papers, so that the sheriff would not have to formally serve them on her. Defendant signed all of the papers given to her by the attorney, in spite of some changes in the terms agreed upon during the couple's previous discussions. Defendant was taking prescription medicine at this time.

The parties then went before Judge Honeycutt for entry of a consent order. Upon being asked if she understood the order and if she had any questions about it, defendant answered "yes." Thereafter, Judge Honeycutt signed the order and directed that it be filed.

The testimonies of defendant's two witnesses—her mother, Carolyn Brock, and her supervisor at work, Nikki Key—both indicated that defendant was very upset and crying uncontrollably from

22 April to 3 May 1995. Carolyn Brock indicated that defendant had been placed on prescription medicine in an effort to improve her mental state. Both witnesses attested to plaintiff's attempt to foil any contact between defendant and her children. Further, they stated that defendant thought that she would be seeing a magistrate, and not a judge, on 3 May 1995.

After the presentation of defendant's evidence, plaintiff made a motion to dismiss pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure. The trial court, after hearing the arguments of both parties, entered an order on 26 January 1996 granting plaintiff's motion and dismissing defendant's motion to have the 3 May 1995 consent order set aside.

Thereafter, plaintiff filed a motion for attorneys fees, supported by the affidavit of his attorney. This motion was heard by Judge Honeycutt at a special session of Davidson County District Court on 22 February 1996. By corrected order entered 7 June 1996, Judge Honeycutt allowed this motion. Defendant appeals.

Defendant presents some seven arguments on appeal, in which defendant argues for reversal of the trial court's order granting plaintiff's Rule 41(b) dismissal of her Rule 60(b) motion to set aside the 3 May 1995 consent order. After a thorough review of these arguments, we conclude that the trial court committed reversible error in denying defendant's Rule 60(b) motion to set aside the 3 May 1995 consent order and granting plaintiff's Rule 41(b) dismissal of defendant's motion, as there was sufficient evidence that the 3 May 1995 consent order was the result of plaintiff's use of duress and/or undue influence in negotiation of said order.

[1] Defendant first argues that the trial court erred in failing to preserve a transcript of the 3 May and 13 September 1995 court proceedings. North Carolina General Statutes section 7A-198(a) provides:

> Court-reporting personnel shall be utilized, if available, for the reporting of civil trials in the district court. If court reporters are not available in any county, electronic or other mechanical devices shall be provided by the Administrative Office of the Courts upon request of the chief district judge.

N.C. Gen. Stat. § 7A-198(a) (Cum. Supp. 1997). In *Miller v. Miller*, 92 N.C. App. 351, 374 S.E.2d 467 (1988), this Court addressed the issue of whether a hearing conducted on a motion in the cause requesting

a modification of a child custody order is a "trial" within the meaning of General Statutes section 7A-198(a). We answered in the affirmative, stating, "We strongly disapprove of the failure to comply with the mandate of G.S. 7A-198." *Id.* at 354, 374 S.E.2d at 469. The mere violation of the statute, however, was not enough to afford the defendant relief, as she failed to show prejudicial error. *Id.; see In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995); *McAlister v. McAlister*, 14 N.C. App. 159, 187 S.E.2d 449, *cert. denied*, 281 N.C. 315, 188 S.E.2d 898 (1972). The Court then dismissed the appeal for failure to include any recitation of the evidence presented at trial. In doing so, the Court

> note[d] that means were available for defendant to compile a narration of the evidence, i.e., reconstructing the testimony with the assistance of those persons present at the hearing. If appellee was then to contend the record on appeal was inaccurate in any respect, the matter could be resolved by the trial judge in settling the record on appeal.

*Miller*, 92 N.C. App. at 354, 374 S.E.2d at 469 (citation omitted).

In the instant case, by defendant's own admission, the 3 May 1995 proceedings before Judge Honeycutt lasted a mere five minutes—long enough to inquire as to whether both parties agreed to the provisions of the consent order. This proceeding was not, then, a trial within the meaning of section 7A-198(a) of our General Statutes. We now examine the circumstances surrounding the 13 September 1995 hearing on defendant's Rule 60(b) motion to set aside the 3 May 1995 consent order.

At the 13 September 1995 hearing, Judge Honeycutt stated that he had no independent recollection of the previous 3 May 1995 proceedings, but noted that if he did, he would let the parties know and consider recusing himself. Significantly, however, in the court's findings of fact in its 26 January 1996 order, the trial court stated, "The undersigned does not recall the defendant being emotionally distraught or mentally or physically impaired when she appeared before him for entry of the consent order on May 3, 1995[,]" in direct contravention of its earlier disavowal of independent recollection of the previous proceedings. If the trial court did recall the information as indicated in this finding, he had promised the parties that he would inform them and possibly recuse himself, as he may be a possible witness in future proceedings in this matter. There is no evidence in the record that such action was ever taken.

Although it is true, as plaintiff contends, that there is a "long-standing rule . . . that there is a presumption in favor of regularity and correctness in proceedings in the trial court," *Harvey & Son v. Jarman,* 76 N.C. App. 191, 195, 333 S.E.2d 47, 50 (1985), where the appellant presents evidence to rebut such a presumption, this Court will not turn a deaf ear to that evidence. Moreover, while "[i]t is the appellant's responsibility to make sure that the record on appeal is complete and in proper form," *Miller,* 92 N.C. App. at 353, 374 S.E.2d at 468, where the appellant has done all that she can to do so, but those efforts fail because of some error on the part of our trial courts, it would be inequitable to simply conclude that the mere absence of the recordings indicates the failure of appellant to fulfill that responsibility.

After examination of the record, we conclude that the 13 September 1995 hearing on defendant's Rule 60(b) motion to set aside the 3 May 1995 consent order was a trial within the meaning of General Statutes section 7A-198(a). Moreover, in light of the gravity of the allegations and proceedings surrounding defendant's Rule 60(b) motion to set aside the consent order, we conclude that it was error for the trial court to fail to record (or produce those recordings of) those proceedings. Defendant cannot, however, show prejudice in the instant case as the record includes both parties' versions of the 13 September 1995 proceedings. Hence, we proceed to defendant's next argument.

[2] Defendant next argues that the trial court erred in denying her motion for relief from the 3 May 1995 consent order when she established a basis for relief from that order. Rule 60(b) provides that a party may be granted relief from judgment or an order for "[f]raud (. . . intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" N.C.R. Civ. P. 60(b)(3). A trial court's ruling on a Rule 60(b) motion is reviewable only for an abuse of discretion. *Harris v. Harris,* 307 N.C. 684, 300 S.E.2d 369 (1983). The trial court's findings of fact are conclusive on appeal, if supported by competent evidence. *Wynnewood Corp. v. Soderquist,* 27 N.C. App. 611, 219 S.E.2d 787 (1975). However, those conclusions of law made by the court are reviewable on appeal. *Id.*

In the instant case, we find no error in the trial court's findings and conclusions regarding the absence of fraud and misrepresentation. We cannot, however, agree that the trial court's findings support its conclusion that there was "insufficient evidence to support

defendant's contention that the consent order was the result of . . . misconduct"—in this instance, duress and/or undue influence.

In *Stegall v. Stegall*, this Court, quoting the Supreme Court in *Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971), stated:

> "Duress is the result of coercion." "Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will." "It may exist even though the victim is fully aware of all facts material to his or her decision."

*Stegall v. Stegall*, 100 N.C. App. 398, 401, 397 S.E.2d 306, 307-08 (1990) (quoting *Link*, 278 N.C. at 191, 194, 179 S.E.2d at 703, 704-05)) (alterations in original) (citations omitted), *disc. review denied*, 328 N.C. 274, 400 S.E.2d 461 (1991). In *Stegall*, we also noted the "[f]actors relevant in determining whether a victim's will was actually overcome":

> "the age, physical and mental condition of the victim, whether the victim had independent advice, whether the transaction was fair, whether there was independent consideration for the transaction, the relationship of the victim and alleged perpetrator, the value of the item transferred compared with the total wealth of the victim, whether the perpetrator actively sought the transfer and whether the victim was in distress or an emergency situation."

*Id.* at 401-02, 397 S.E.2d at 308 (quoting *Curl v. Key*, 64 N.C. App. 139, 142, 306 S.E.2d 818, 820 (1983), *rev'd on other grounds*, 311 N.C. 259, 316 S.E.2d 272 (1984)). In *Link*, our Supreme Court adopted the rule

> "that the act done or threatened may be wrongful even though not unlawful, *per se*; and that the threat to institute legal proceedings, criminal or civil, which might be justifiable, *per se*, becomes wrongful, within the meaning of this rule, if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings."

*Id.* at 194, 179 S.E.2d at 705.

In the instance where the court cannot find sufficient threat to constitute duress, it may still find the presence of undue influence. In *Edwards v. Bowden*, this Court quoted with approval *Pollock on Contracts* and *Pomeroy on Equity Jurisprudence*:

> "Any influence brought to bear upon a person entering into an agreement or consenting to a disposal of property, which, having

regard to the age, capacity of the party, the nature of the transaction, and all the circumstances of the case, appears to have been such as to preclude the exercise of free and deliberate judgment, is considered by courts of equity to be undue influence, and is a ground for setting aside the act procured by its employment." Pollock on Contracts, 524. "Where there is no coercion amounting to duress, but a transaction is the result of a *moral, social or domestic* force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances, undue influence naturally has a field to work upon in the conditions or circumstances of the person influenced, which renders him peculiarly susceptible and yielding; his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like." Pomeroy, Equity Jurisprudence, 951.

*Edwards v. Bowden*, 107 N.C. 58, 62-63, 12 S.E. 58, 59 (1890), *quoted in Link*, 278 N.C. at 195-96, 179 S.E.2d at 706.

The evidence in the instant case tends to show that plaintiff, upon discovering that defendant had been unfaithful to him, demanded that the parties immediately separate, and make immediate arrangements for the custody of their minor children and distribution of the marital property. Plaintiff told defendant that if she did not complete, sign, and notarize a document purporting to govern their separation, he would take her to court and expose the minor children to the facts surrounding their separation. Although defendant was accompanied by relatives during subsequent meetings with plaintiff to further negotiate a separation agreement, defendant had already been warned by plaintiff (and plaintiff had reiterated on several occasions) that he would disgrace her in court, and subject the minor children to custody proceedings in court, if she did not comply with his wishes. Advice from her mother and supervisor went unheeded due, at least in part, to plaintiff's veiled threats. In fact, there was evidence tending to show that defendant's attempts to see her sons were indeed foiled from 23 April to 3 May 1995, and since 3 May 1995, visitation with the boys has been sparse. There was further evidence that defendant was under the influence of prescription medication to help her with "uncontrollable bouts of crying" and insomnia, at the time of the 3 May 1995 hearing. Defendant contends that she was "shocked

and confused" on the day that she appeared before Judge Honeycutt for entry of the consent order. She had just found out that plaintiff had an attorney, had been served with the summons and complaint, had signed over her share in the marital home, and found herself in front of a judge, instead of the magistrate, who she believed would hear the case.

Again, Judge Honeycutt made a finding of fact in the 26 January 1996 order granting plaintiff's Rule 41(b) motion for involuntary dismissal that "The undersigned does not recall the defendant being emotionally distraught or mentally or physically impaired when she appeared before him for entry of the consent order on May 3, 1995." However, the opening paragraph of that order specifically avers, "Judge Honeycutt indicated he had no independent recollection of the parties appearing before him for the entry of the Consent Order and further indicated that should he have the same, he would consider recusal at that time." One who has no independent recollection of the parties appearing before him cannot then make a finding as to the mental or physical condition of one of the parties on that occasion. As this finding of fact is clearly in conflict with the evidence before us on appeal, it fails.

Inexorably, the evidence, in light of the existing case law, leads us to the conclusion that there was sufficient evidence to show misconduct on plaintiff's part, so as to render the 3 May 1995 consent order void. Looking at the totality of the circumstances, defendant was in distress, torn between her wish to protect her children and her wish to reach an equitable separation agreement. Plaintiff was aware of his wife's vulnerability, since she had pleaded with him on a number of occasions to try to work things out, to let her see her children, and to reach a fair agreement. Plaintiff actively sought the agreement as written: (1) he insisted on the evening of 22 April 1995, that something had to be agreed upon, signed, and notarized that night; and (2) subsequently, he contacted her to get a final separation agreement completed. Defendant's Exhibit 2, not admitted into evidence at the 13 September 1995 hearing, but now a part of the record on appeal, further discloses the inequities of the consent order—in that plaintiff received more than 80% of the marital estate.

The trial court found that defendant made a "calculated decision" to enter into a settlement of all marital issues with plaintiff, and that she had sufficient education and intelligence to appreciate the situation and understand the provisions of the consent order before sign-

COPPLEY v. COPPLEY

[128 N.C. App. 658 (1998)]

ing it. However, plaintiff could not make a calculated decision when she was effectively robbed of her free will with threats of harm to her children, or loss of visitation with her children. Pointedly, the 26 January 1996 order is silent as to plaintiff's behavior in reference to withholding defendant's visitation with the children. Although defendant was not threatened with any show of physical force or violence, this is not conclusive on the issue of duress in this case.

As our Supreme Court stated in *Link*, "Duress is the result of coercion." *Id.* at 191, 179 S.E.2d at 703. Coercion may be both physical and mental. The facts in the instant case tend to show a rather striking resemblance to duress and/or undue influence as described in *Link*, *Edwards*, and *Stegall*. It is clear that defendant was in a vulnerable position—at the mercy of plaintiff, who determined defendant's rights in regards to her children; that plaintiff engaged in subtle manipulation of defendant in that vulnerable position—threatening defendant's relationship with her children if she did not sign the consent order and go along with his terms for the custody and support of the minor children, and the distribution of the marital property; and that defendant was thereby robbed of taking action of her own free will, preventing the giving of true consent. Thus, we conclude that the trial court abused its discretion in denying defendant's motion to set aside the 3 May 1995 consent order, and dismissing the motion pursuant to Rule 41(b).

In light of our conclusion in this regard, we need not address defendant's remaining arguments. Accordingly, we reverse the 26 January 1996 order denying defendant's motion to set aside the 3 May 1995 consent order. It, then, follows that the 7 June 1996 order allowing plaintiff's motion for counsel fees is also reversed.

Reversed.

Judges EAGLES and MARTIN, John C., concur.