ROBERT G. YUREK AND WIFE, SUSAN G. YUREK, PLAINTIFFS v. SARA PAGE SHAFFER AND MATTHEW CHRISTIAN BOYD, DEFENDANTS

No. COA08-1410

(Filed 7 July 2009)

**1. Child Support, Custody, and Visitation— child custody—nonparents—consent judgment—subject matter jurisdiction**

The trial court did not err in a child custody case involving a child born out of wedlock by denying defendant mother's motion for N.C.G.S. § 1A-1, Rule 60(b) relief from a consent judgment, by concluding that it had jurisdiction over the parties and the subject matter of this action when entering the original consent judg-

ment, and by determining that the minor child's interests were best served by maintaining his primary physical custody with plaintiffs because: (1) defendant admitted during oral arguments that plaintiffs, the father's sister and brother-in-law, qualified as "relatives" under N.C.G.S. § 50-13.1(a) who are permitted to bring a child custody action; (2) regarding defendant's constitutionally protected status as a parent, plaintiffs' complaint for custody alleged that both she and the fifteen-year-old father were, at the time of the complaint, unemployed, dealing with substance abuse issues, and not able to provide for the care of the minor child; (3) a natural parent's execution of a valid consent judgment granting exclusive care, custody, and control of a child to a nonparent may be a factor upon which the trial court could base a conclusion that a parent has acted inconsistently with his or her constitutionally protected status; and (4) the evidence constituted clear and convincing proof that defendant's conduct was inconsistent with her right to custody of the child, including that defendant at the time of the "In Home Family Agreement" acknowledged substance abuse and domestic violence issues and voluntarily agreed that it was in the best interests of the minor child to be placed with plaintiffs; defendant voluntarily consented to the minor child's placement with other parties including first with the father's parents and then with plaintiffs; and defendant failed to produce evidence that she had a substantial degree of personal, financial, or custodial contact with the minor child after these placements.

**2. Judgments— consent judgment—failure to show duress or undue influence**

The trial court did not act arbitrarily in a child custody case by determining that defendant mother failed to show she was under duress or undue influence when she executed a consent judgment because: (1) although defendant's drug abuse problems were well-documented in the record, she failed to provide any evidence, other than her bare allegations, that she was under the influence of any drug or other mind-altering substance on the date she signed the consent judgment; (2) although Rule 4.3 of the North Carolina Rules of Professional Conduct prohibits a lawyer from giving legal advice to an unrepresented adverse party, there was no evidence in the record indicating that the attorney for DSS and plaintiffs gave defendant any legal advice or attempted to influence her decision in any way; (3) approxi-

mately thirteen days passed between the last of the meetings regarding the minor child's placement and defendant's execution of the consent judgment, but she made no effort during this time to seek legal advice despite her contention that she was unduly influenced by plaintiff's statement that she did not need a lawyer; (4) although defendant testified at the Rule 60(b) motion hearing that her understanding of the legal consequences of the consent judgment was initially limited, the record revealed, and the trial court found, that at the time of the consent judgment, defendant was twenty years old, enrolled in community college, and had previously interacted with DSS several times; and (5) defendant's testimony also indicated that at the time of the consent judgment, she made a rational determination that placing the minor child with someone else while she was "getting sober" was in the child's best interest, and that she understood that whenever she got herself back together and wanted the child to come home, defendant just had to go to the court and petition the court to get him back.

**3. Judgments— subject matter jurisdiction—third party cannot challenge validity of consent judgment entered into by minor**

Although defendant mother contends the trial court lacked subject matter jurisdiction to enter or approve a consent judgment in a child custody case since defendant father was a minor, was not appointed a guardian *ad litem*, was not represented by any other type of guardian or by counsel, and thus was incapable of consenting to the judgment as a matter of law, a third party has no standing to challenge the validity of a consent judgment entered into by a minor. Defendants signed the consent judgment separately, and although the mother was a party to the consent judgment, she does not have standing to challenge the father's capacity to consent to the judgment.

Appeal by defendants from judgment entered 6 June 2008 by Judge Charles W. Wilkinson, Jr. in Granville County District Court. Heard in the Court of Appeals 20 April 2009.

*James T. Duckworth, III for defendant-appellant Shaffer.*

*Michael P. Burnette for plaintiff-appellees.*

MARTIN, Chief Judge.

Defendant-appellant Sara Page Shaffer ("Shaffer") appeals from the trial court's 6 June 2008 denial of her Rule 60(b) motion to vacate a consent judgment entered 13 November 2006.

Shaffer and defendant Matthew Christian Boyd ("Boyd") are the natural parents of the minor child J.C.B., who was born on 26 May 2006. Shaffer, Boyd, and J.C.B. lived together in Person and Granville Counties from J.C.B.'s birth until 18 August 2006. Shaffer, who was 19 years old at the time, was dealing with substance abuse issues and was on felony probation for breaking or entering and larceny. Boyd was only 15 years old. During this period, the Person County Department of Social Services ("DSS") initiated an investigation with respect to J.C.B.

On 18 August 2006, J.C.B. went to live with Shaffer's parents, and continued living in their home until 1 November 2006. During that time, the Granville County DSS was managing the case and providing services to Shaffer, Boyd, and J.C.B. under the supervision of In Home Family Services agent Kay Putney ("Putney"). Putney went to Shaffer's parents' home to investigate and insure J.C.B.'s safety. At some point in fall 2006, Shaffer's parents approached DSS and expressed their unwillingess to maintain full-time custody of J.C.B. Putney met with Shaffer and Boyd at Boyd's parents' home, and then, on 17 October 2006, met with all of the parties at the offices of the Granville County DSS to formulate an "In Home Family Services Agreement." The following parties were present at this meeting: Shaffer, Boyd, DSS Supervisor Jonathon Cloud, Foster Care Supervisor Shelia Smith, Shaffer's sister Doris Jacobs, Boyd's mother Joyce Boyd, and Boyd's sister and brother-in-law, Susan and Robert Yurek ("plaintiffs").

The "In Home Family Services Agreement" identified domestic violence and substance abuse as behaviors of concern and listed "decide whether to place [J.C.B.] in foster care or give custody to family members Robert and Susan Yurek" as an activity of the meeting. A subsequent provision of the agreement provided that, if J.C.B.'s safety could no longer be assured, "[a] petition will be filed and the child will be placed in foster care." On 1 November 2006, the parties met in the law offices of Hopper, Hicks, & Wrenn, L.L.P., with attorney N. Kyle Hicks ("Hicks") to discuss the custody of J.C.B. Hicks was paid by and represented the interests of DSS, and also represented plaintiffs privately. Shaffer and Boyd were not represented by counsel at the time of this meeting.

On 13 November 2006, Shaffer, Boyd, and plaintiffs again met with Hicks and were presented with a complaint, summons, and consent judgment. Shaffer and Boyd signed the consent judgment without objection. That same day, plaintiffs filed a complaint for custody, alleging, inter alia, that "plaintiff, Susan Yurek is Boyd's sister, and therefore is an aunt to [J.C.B]." The complaint also alleged that "[p]laintiffs are fit and proper persons to have custody of the minor child and have discussed the same with [Boyd and Shaffer, who] have consented to the Plaintiffs having custody of the minor child." The consent judgment was entered in Granville County District Court on 1 December 2006 and provided in part:

4. That [Boyd and Shaffer] are the biological parents of the minor child, [J.C.B.] born May 26, 2006.

. . . .

8. That the Plaintiffs are fit and proper persons to exercise the exclusive care, custody and control of the minor child, and that it is in the best interest of said minor child, and would best promote his general welfare, that his exclusive care, custody and control be granted to the Plaintiffs.

9. That the minor child, [J.C.B.], born May 26, 2006, has resided with [Boyd and Shaffer] from his date of birth up to August 17, 2006 at which time the minor child resided with the maternal grandparents. The minor child began to reside with the Plaintiffs on November 1, 2006.

10. That the Plaintiff, Robert Yurek, is employed and the Plaintiff, Susan Yurek, is a stay at home mother, and Plaintiffs have a home with sufficient space and provisions for the minor child, including the child's own bedroom, toys, clothing, food and all of the essential provisions for the minor child.

11. That the Defendants are both currently unemployed and are dealing with substance abuse issues in their own lives and not able at this time to provide for the care of the minor child.

12. That the minor child was born out of wedlock and [Boyd] has not established paternity judicially or by affidavit filed in a central registry maintained by the Department of Health and Human Services, and the father has not legitimated the minor child pursuant to the provisions of N.C.G.S. § 49-10, or filed a Petition for that specific purpose, nor has the respondent father legitimated the minor child by marriage to the mother of the minor child.

13. That [Boyd and Shaffer] have agreed to surrender custody of the minor child to Plaintiffs.

14. That the parties have agreed that [Boyd and Shaffer] will have visitation with the minor child as may be agreed upon between them.

15. That by their signature hereto [Boyd and Shaffer] have waived their rights to further answer or respond to the Complaint herein. In addition, [Boyd and Shaffer] have waived their right to be notified for hearing and consent to this Judgment being entered as soon as possible at any term of the District Court in Granville County by any District Court Judge of the 9th Judicial District.

Based upon these and other findings of fact, the district court concluded as a matter of law that the parties were properly before the district court, and that facts existed justifying the district court to assume jurisdiction to determine the custody of J.C.B. pursuant to N.C.G.S. § 50A-3. The district court further concluded that plaintiffs are fit and proper persons to exercise exclusive care, custody and control of J.C.B. and that "it is in the best interest of [J.C.B.], . . . and would promote his general welfare for his exclusive care, custody and control to be granted to plaintiffs." The consent judgment was signed by plaintiffs, Shaffer, Boyd, and Hicks as counsel for plaintiffs.

On 10 May 2007, Shaffer filed a motion to vacate the consent judgment pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure, alleging that she was threatened with termination of her parental rights unless she signed the consent judgment, and that, because there were "insufficient findings of fact to support a divestiture of legal and physical custody" from Shaffer and Boyd, the district court was without jurisdiction to enter the consent judgment. Shaffer asked the district court to find that the "proceedings, procedures and representations made to the Defendant Shaffer constitute fundamental unfairness which violate her constitutionally guaranteed custodial rights as a biological mother, . . . substantive (and procedural) due process rights as guaranteed by the 14th Amendment to the United States Constitution and the Constitution of the State of North Carolina, . . . that Shaffer did not execute the consent judgment voluntarily, but under threat, coercion and duress," and, accordingly, to vacate the consent judgment as void as a matter of law.

On 6 June 2008, the district court entered an order denying Shaffer's motion to set aside the consent judgment pursuant to Rule

60(b). The district court found that the allegations contained in plaintiffs' complaint and the findings of fact contained in the consent judgment filed 1 December 2006 were true and accurate, and thus adopted them for purposes of the order. The district court also made the following findings of fact:

12. That [at the 17 October 2006 meeting between the parties,] the alternative given to [Shaffer] [sic] decide whether to place [J.C.B.] in foster care or give custody to [plaintiffs].

13. That the matters of [Shaffer]'s substance abuse and domestic violence was [sic] acknowledged by [Shaffer] and taken into consideration.

14. That it was agreed by all parties present that it would be in the best interests of the minor child that custody be placed with the Plaintiffs, . . . rather than to begin a [DSS] Petition for Neglect and perhaps place [J.C.B.] in foster care.

15. That [DSS] agreed to effect the transfer to [plaintiffs].

16. That on the 1st day of November 2006, all parties met with and in the office of [Hicks], an attorney with 23 years of legal experience and a partner in the firm of Hopper, Hicks, & Wrenn, L.L.P.

17. That [Hicks] was paid by and represented the interests of [DSS] with the knowledge and consent of [Shaffer and Boyd]. That the Complaint and the Consent Judgment both reflect that [Hicks] also represented [plaintiffs] privately.

18. That neither [Shaffer or Boyd] was represented by counsel during either the investigatory process nor at any time during the legal proceeding.

19. That no conflict existed between any of the parties and in [sic] [Hicks] at the date the above-entitled action was begun.

20. That it was anticipated and expressed by the parties to [Shaffer and Boyd], that when issues of substance abuse and domestic violence and parental responsibility were resolved, that [Shaffer and Boyd] could *petition* for a change of custody.

21. That on the 13th of November, 2006 [Shaffer and Boyd] and the Plaintiffs prior to November 13, 2006, [sic] the parties again met at the office of [Hicks] and were presented with a Complaint,

Summons, and Consent Judgment all of which were executed without objection and further that said Consent Judgment "waived any further hearing and consented to the entry of the Judgment as soon as possible . . . . by any District Court Judge of the Ninth Judicial District."

22. That [Putney] and [Hicks] reported that Plaintiffs' house was also visited by [Putney] on multiple occasions and the last one was when the file was closed in December, 2006 which was in the final report.

23. That at the time of the Consent Judgment [Shaffer] was 20 years of age, competent, attending school making B's and C's, and was otherwise able to understand the consequences of her actions although she stated that she was impaired by the use of marijuana on the 13th day of November, 2006.

24. That on the 13th day of November, 2006 it was in the best interests of the minor child that custody be placed with the Plaintiffs.

(Emphasis in original.) Based upon these and other findings of fact, the district court made the following conclusions of law:

1. That the Court has jurisdiction of the parties hereto and of the subject matter herein.

2. That the Consent Judgment entered on the 13th day of November 2006 was freely and knowingly entered into by [Shaffer] and that no extraordinary circumstances existed to justify setting aside the Consent Judgment.

3. That on the 13th day of November, 2006 it was in the best interests of the minor child that custody be placed with [plaintiffs].

From this order, Shaffer now appeals, arguing that: (1) the district court did not have subject matter jurisdiction over this action because plaintiffs did not have standing; (2) the district court abused its discretion by failing to find as fact that the 1 December 2006 consent judgment was a result of misconduct by Hicks; (3) Boyd, as a minor at the time of the consent judgment, was incapable of consenting to the judgment as a matter of law. For the reasons stated below, we affirm the ruling of the trial court.

[1] Shaffer first assigns error to the trial court's finding and conclusion, in its order denying her motion for Rule 60(b) relief, that it had

jurisdiction of the parties and the subject matter of this action in entering the original consent judgment. As part of this argument, Shaffer contends that plaintiffs did not have standing to sue for custody of J.C.B. under N.C.G.S. § 50-13.1(a). We disagree.

While the standard of appellate review of a trial court's ruling on a Rule 60(b) motion is generally for an abuse of discretion, *Barnes v. Wells*, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004) (citing *Coppley v. Coppley*, 128 N.C. App. 658, 663, 496 S.E.2d 611, 616, *disc. review denied*, 348 N.C. 281, 502 S.E.2d 846 (1998)), " 'whether a trial court has subject matter jurisdiction is a question of law, which is reviewable on appeal *de novo*.' " *Childress v. Fluor Daniel, Inc.*, 172 N.C. App. 166, 167, 615 S.E.2d 868, 869 (2005) (quoting *Ales v. T.A. Loving Co.*, 163 N.C. App. 350, 352, 593 S.E.2d 453, 455 (2004)).

Subject matter jurisdiction has been defined as a court's power to hear a specific type of action, and "is conferred upon the courts by either the North Carolina Constitution or by statute." *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) (citing *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987)). A lack of subject matter jurisdiction has been found where the petitioner lacked standing. *See In re Miller*, 162 N.C. App. 355, 358-59, 590 S.E.2d 864, 866 (2004) (no subject matter jurisdiction because DSS lacked standing to petition). Standing for an individual to bring an action for child custody is governed by N.C.G.S. § 50-13.1(a), which provides in pertinent part that "[a]ny parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child . . . ." N.C. Gen. Stat. § 50-13.1(a) (2007). Although N.C.G.S. § 50-13.1(a) broadly grants standing to any parent, relative, or person claiming the right to custody, when such actions are brought by a non-parent to obtain custody to the exclusion of a parent, our appellate courts have also required allegations of some act inconsistent with the parent's constitutionally protected status. *See Penland v. Harris*, 135 N.C. App. 359, 362, 520 S.E.2d 105, 107 (1999) (holding that the ruling in *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), required maternal grandmother seeking custody to allege facts sufficient to show that mother acted inconsistently with her constitutionally protected status). As our Supreme Court has explained, "[a] natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child."

*Price*, 346 N.C. at 79, 484 S.E.2d at 534 (citing *Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614 (1983). However, the Court continued,

> the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. However, conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights, would result in application of the "best interest of the child" test without offending the Due Process Clause. Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents. Where such conduct is properly found by the trier of fact, based on evidence in the record, custody should be determined by the "best interest of the child" test mandated by statute.

*Id.* at 79, 484 S.E.2d at 534-35 (citations omitted). Our Supreme Court later held that "a trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citing *Santosky v. Kramer*, 455 U.S. 745, 747-48, 71 L. Ed. 2d 599, 603 (1982)).

In *Cantrell v. Wishon*, 141 N.C. App. 340, 540 S.E.2d 804 (2000), this Court was presented with a set of facts similar to those in the case at bar. A mother signed a document stating she wanted plaintiffs, the paternal aunt and uncle of her minor children, to act as the children's parents, and then voluntarily left the children with the plaintiffs while she underwent drug rehabilitation treatment. *Id.* at 341, 540 S.E.2d at 805. After five months of infrequent visits from the mother, the plaintiffs sued for custody of the children. *Id.* We indicated that plaintiffs had standing to bring a suit for custody, but ultimately remanded to the trial court for findings as to whether mother had acted inconsistently with her constitutionally protected status. *Id.* at 344, 540 S.E.2d 806. Our opinion discussed the *Price* court's treatment of the issue:

In determining whether the mother acted inconsistently with her protected status, the Court considered a number of other issues: Whether her relinquishment of custody was intended to be temporary or permanent; whether her behavior had created the family unit that existed between the plaintiff and the child; and the degree of custodial, personal and financial contact between her and her child.

*Cantrell*, 141 N.C. App. at 343, 540 S.E.2d at 806 (2000) (citing *Price*, 346 N.C. at 83-84, 484 S.E.2d at 537).

Here, Shaffer first argues in her brief that the father of a child born out of wedlock is considered an "other person" under the statute, and, by extension, the relatives of such a father should also be considered "other persons." However, at oral argument, Shaffer's attorney admitted to this Court that plaintiffs in this case qualify as "relatives" under N.C.G.S. § 50-13.1(a). Furthermore, we note that neither Shaffer nor Boyd has disputed plaintiffs' status as biological relatives of J.C.B. until this appeal. A "relative" has been defined as a "person connected with another by blood or affinity; a person who is kin with another." Black's Law Dictionary 1315 (7th ed. 2004). Under this plain meaning, the meaning which all parties have apparently assigned to the term as utilized in the statute, we conclude that plaintiffs properly filed a claim for custody of J.C.B. as relatives under N.C.G.S. § 50-13.1(a).

As to Shaffer's constitutionally protected status, we first note that plaintiffs' complaint for custody alleged that both Shaffer and Boyd were, at the time of the complaint, unemployed, dealing with substance abuse issues, and not able to provide for the care of J.C.B. We also note that, under the factors considered by the *Price* Court and noted by this Court in *Cantrell*, a natural parent's execution of a valid consent judgment granting exclusive care, custody, and control of a child to a nonparent, may be a factor upon which the trial court could base a conclusion that a parent has acted inconsistently with his or her constitutionally protected status. *See Cantrell*, 141 N.C. App. at 343, 540 S.E.2d at 806. Though Shaffer disputes the validity of the consent judgment, the findings contained in the trial court's consent judgment and in its order denying Shaffer's Rule 60(b) motion, which appear well supported by our review of the record, demonstrate that Shaffer, prior to execution of the consent judgment, invariably acted in a manner inconsistent with her paramount interest in the custody, care, and control of J.C.B. Notably, at the time of the "In Home Family Agreement," Shaffer acknowledged substance abuse and domestic

violence issues and voluntarily agreed that it was in the best interests of J.C.B. to be placed with plaintiffs. Furthermore, Shaffer voluntarily consented to J.C.B.'s placement with other parties-first with Boyd's parents, and then with plaintiffs—and Shaffer has produced no evidence that she had a substantial degree of personal, financial, or custodial contact with J.C.B. after these placements.

The trial court's findings of fact are sufficient to support a conclusion that Shaffer's conduct was inconsistent with her protected interest in the custody of J.C.B. Moreover, the evidence of record constitutes clear and convincing proof that Shaffer's conduct was inconsistent with her right to custody of the child. As such, the trial court did not err in applying the "best interest of the child" standard, determining that J.C.B.'s interests were best served by maintaining his primary physical custody with plaintiffs, and entering the consent judgment. Accordingly, this assignment of error is overruled.

**[2]** Shaffer contends, however, that we should not consider her execution of the consent judgment and she assigns error to the trial court's denial of her Rule 60(b) motion to set it aside. Shaffer alleges that because she was young, unrepresented by counsel, and allegedly under the influence of marijuana at the time she signed the consent judgment, she was particularly vulnerable to the undue influence of Hicks and DSS, and that Hicks's communications with Shaffer leading up to her execution of the consent judgment amounted to improper misconduct. Accordingly, Shaffer contends, the district court's denial of her Rule 60(b) motion was manifestly unsupported by reason. We disagree.

Shaffer relies on N.C.G.S. § 1A-1, Rule 60(b)(3), which provides in pertinent part:

> On motion and upon such terms as are just, the court *may* relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other *misconduct* of an adverse party;

N.C. Gen. Stat. § 1A-1, Rule 60(b) (2007) (emphasis added). We review the denial of a motion pursuant to Rule 60 for an abuse of discretion. *Ollo v. Mills*, 136 N.C. App. 618, 625, 525 S.E.2d 213, 217 (2000) (citing *Hickory White Trucks, Inc. v. Greene*, 34 N.C. App. 279, 237

S.E.2d 862 (1977)). "A trial court may be reversed for abuse of dis-
cretion only upon a showing that its actions are manifestly unsup-
ported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d
829, 833 (1985) (citing *Clark v. Clark*, 301 N.C. 123, 271 S.E.2d 58
(1980)). "A ruling committed to a trial court's discretion is to be
accorded great deference and will be upset only upon a showing
that it was so arbitrary that it could not have been the result of a rea-
soned decision." *Id.*

A consent judgment has been defined by this Court as "the con-
tract of the parties entered upon the records of a court of competent
jurisdiction with its sanction and approval." *Blankenship v. Price*, 27
N.C. App. 20, 22, 217 S.E.2d 709, 710 (1975) (citing *King v. King*, 225
N.C. 639, 35 S.E.2d 893 (1945)). Because a consent judgment incor-
porates the bargained agreement of the parties, such a judgment may
be attacked only on limited grounds: "it cannot be changed without
the consent of the parties or set aside except upon proper allegation
and proof that consent was not in fact given or that it was obtained
by fraud or mutual mistake, the burden being upon the party attack-
ing the judgment." *Id.* (citation omitted).

This Court has held that, under Rule 60(b), duress or undue influ-
ence used to secure execution of a consent order may amount to mis-
conduct justifying relief from the order. *Coppley*, 128 N.C. App. at
664, 496 S.E.2d at 618 (reversing trial court's denial of defendant's
Rule 60(b) motion to set aside a consent judgment obtained when
defendant was under the influence of prescription medication and
emotionally distraught after plaintiff's threats to expose her extra-
marital affair in court and in front of their children). " 'Duress is
the result of coercion.' " *Stegall v. Stegall*, 100 N.C. App. 398, 401, 397
S.E.2d 306, 307-08 (1990) (quoting *Link v. Link*, 278 N.C. 181, 191, 179
S.E.2d 697, 703, *disc. review denied*, 328 N.C. 274, 400 S.E.2d 461
(1991)). " 'Duress exists where one, by the unlawful act of another, is
induced to make a contract or perform or forego some act under
circumstances which deprive him of the exercise of free will.' "
*Id.* (quoting *Link*, 278 N.C. at 194, 179 S.E.2d at 705). "Factors rele-
vant in determining whether a victim's will was actually overcome"
are as follows:

> [T]he age, physical and mental condition of the victim, whether
> the victim had independent advice, whether the transaction was
> fair, whether there was independent consideration for the trans-
> action, the relationship of the victim and alleged perpetrator, the
> value of the item transferred compared with the total wealth of

the victim, whether the perpetrator actively sought the transfer and whether the victim was in distress or an emergency situation.

*Id.* at 401-02, 397 S.E.2d at 308 (quoting *Curl v. Key*, 64 N.C. App. 139, 142, 306 S.E.2d 818, 820 (1983), *rev'd on other grounds*, 311 N.C. 259, 316 S.E.2d 272 (1984)). "In the instance where the court cannot find sufficient threat to constitute duress, it may still find the presence of undue influence," *Coppley*, 128 N.C. App. at 664, 496 S.E.2d at 617, which has been defined as " 'the exercise of an improper influence over the mind and will of another to such an extent that his professed act is not that of a free agent, but in reality is the act of the third person who procured the result.' " *Stephenson v. Warren*, 136 N.C. App. 768, 772, 525 S.E.2d 809, 812 (quoting *Lee v. Ledbetter*, 229 N.C. 330, 332, 49 S.E.2d 634, 636 (1948)), *disc. review denied*, 351 N.C. 646, 543 S.E.2d 883 (2000).

First of all, we note that, although Shaffer's drug abuse problems have been well-documented in the record, Shaffer has failed to provide any evidence, other than her bare allegations, that she was under the influence of any drug or other mind-altering substance on the date she signed the consent judgment. We also note that, when acting as the finder of fact, the trial court has the opportunity to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom. *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (citing *Knutton v. Cofield*, 273 N.C. 355, 160 S.E.2d 29 (1968)). Accordingly, the trial court's findings of fact "are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975).

"[T]here is no prohibition generally on [an attorney] communicating directly with an adverse party who is not represented by counsel." Ethics Op. RPC 15, *N.C. State Bar Lawyers' Handbook* 2008, at 170 (October 24, 1986) (discussing whether an attorney may contact an unrepresented adverse party and make a demand or propose a settlement). Although Rule 4.3(a) of the North Carolina Rules of Professional Conduct prohibits a lawyer from giving legal advice to an unrepresented adverse party, *see* N.C. Rev. R. Prof'l. Conduct R. 4.3(a), 2009 Ann. R. N.C. 818, we find no evidence in the record indicating that Hicks gave Shaffer any legal advice or attempted to influence her decision in any way. Here, Shaffer does not point to any false statement made by Hicks to Shaffer or the trial court leading up to the

consent judgment. Furthermore, though Hicks alleges she was unduly influenced by Putney's statement, "No, you don't need [a lawyer]. You just need to sign all this," we note that the context of this statement belies this allegation. The statement occurred after several meetings where Shaffer had participated in discussions regarding J.C.B.'s placement with plaintiffs and in response to Shaffer's question, "Are y'all sure I don't need a lawyer?" The record also reveals that approximately thirteen days passed between the last of these meetings and Shaffer's execution of the consent judgment, but she made no effort during this time to seek legal advice.

Although Shaffer testified at the Rule 60(b) motion hearing that her understanding of the legal consequences of the consent judgment was initially limited, the record reveals, and the trial court found, that at the time of the consent judgment, Shaffer was twenty years old, enrolled in community college, and had previously interacted with DSS several times. Shaffer's testimony also indicated that, at the time of the consent judgment, she made a rational determination that placing J.C.B. with someone else while she was "getting sober" was in J.C.B.'s best interest, and that she understood that "whenever I got myself back together and I wanted [J.C.B.] to come home, I just had to go to the court and petition the court to get him back." Clearly, Shaffer's will was not "actually overcome," there is little evidence to support a claim of undue influence, and our review of the record reveals no "egregious scheme of directly subverting the judicial process." *Henderson v. Wachovia Bank*, 145 N.C. App. 621, 628, 551 S.E.2d 464, 469 (internal quotation marks omitted), *disc. rev. denied*, 354 N.C. 572, 558 S.E.2d 869 (2001). The trial court did not act arbitrarily in determining that Shaffer failed to show she was under duress or undue influence when she executed the consent judgment. Because Shaffer has not met her burden of showing that the trial court's denial of her Rule 60(b) motion was manifestly unsupported by reason, this assignment of error is overruled.

[3] Finally, Shaffer argues that the trial court lacked subject matter jurisdiction to enter or approve the consent judgment because Boyd was a minor, was not appointed a guardian ad litem, was not represented by any other type of guardian or by counsel, and therefore was incapable of consenting to the judgment as a matter of law.

A consent judgment is a bargained-for agreement, *Stevenson v. Stevenson*, 100 N.C. App. 750, 752, 398 S.E.2d 334, 336 (1990), and in North Carolina, "agreements or contracts, except for those dealing

with necessities and those authorized by statute, 'are voidable at the election of the infant and may be disaffirmed *by the infant* during minority or within a reasonable time of reaching majority.' " *Creech v. Melnick*, 147 N.C. App. 471, 476, 556 S.E.2d 587, 591 (2001) (emphasis added) (quoting *Bobby Floars Toyota, Inc., v. Smith*, 48 N.C. App. 580, 582, 269 S.E.2d 320, 322 (1980)). A third party thus has no standing to challenge the validity of a consent judgment entered into by a minor.

Here, Shaffer and Boyd signed the consent judgment separately. Shaffer, though a party to the consent judgment, does not have standing to challenge Boyd's capacity to consent to the judgment. Accordingly, this assignment of error is overruled.

Affirmed.

Judges CALABRIA and STEELMAN concur.